148 So.2d 347 (1962)
George ANDERSON et al.
v.
Percell ADAMS et al.
No. 5706.
Court of Appeal of Louisiana, First Circuit.
December 14, 1962.
Rehearing Denied January 18, 1963.
Certiorari Denied March 12, 1963.
*348 Porteous & Johnson by F. Carter Johnson, Jr., and Ben C. Toledano, New Orleans, for appellant.
Talley, Anthony Hughes & Knight by John W. Anthony, Bogalusa, Watts & Crain by Hillary J. Crain, Franklinton, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiffs herein George Anderson and Fletcher Anderson, instituted this action to recover damages arising from an intersectional collision between a 1954 Chevrolet 4-door sedan, owned by plaintiff, George Anderson, and being operated as a taxi by plaintiff, Fletcher Anderson, and a 1956 Ford Station Wagon owned by one James Henderson and being driven at the time by Gwen Adams George, nee Gwen Adams, a minor, unmarried and residing with her father, Percell Adams, at the time of the accident, but married at the time of institution of this suit. Named defendants herein are Gwen Adams George (sometimes hereinafter referred to as Miss Adams), driver of the Henderson station wagon, Percell Adams, father of the minor driver, Gwen Adams George, James Henderson, owner of the station wagon being driven by Miss Adams, American Insurance Company, liability insurer of the Henderson Station Wagon, and State Farm Mutual Automobile Insurance Company, liability insurer of a 1959 Studebaker Lark owned by Percell Adams but not involved in the accident.
After trial on the merits the esteemed lower court rendered judgment in favor of plaintiff, George Anderson, in the sum of $552.76 (representing property damage to his said automobile) and in favor of plaintiff, Fletcher Anderson, in the sum of $1844.00 (for personal injuries and medical expense) jointly and severally against defendants, Percell Adams, Gwen Adams George and State Farm Mutual Automobile Insurance Company, insurer of the Studebaker Lark owned by Adams but not concerned in the collision in question. Plaintiffs' demands against Henderson and his insurer, American Insurance Company, were rejected. From the adverse judgment defendants cast have appealed suspensively. Plaintiff Fletcher Anderson has devolutively appealed praying for an increase in the award allotted him for personal injuries received.
The accident giving rise to this litigation occurred at approximately 1:30 P.M., April 5, 1961, at which time plaintiff, Fletcher Anderson, was driving the 1954 Chevrolet 4-door sedan owned by his grandfather, plaintiff, George Anderson, southerly along Avenue S, a paved, heavily traveled thoroughfare leading to the business district of the City of Bogalusa. It is undisputed that at the time of the accident Fletcher Anderson was using his grandfather's said automobile as a taxi, the vehicle having been loaned to the former by the latter for that express purpose because Fletcher's own vehicle was then undergoing repair. Present in the cab at the time of the accident was one Mary Williams, a fare paying passenger.
Gwen Adams George (the minor and then unmarried daughter of defendant, Percell Adams) was driving the Henderson Ford Station Wagon easterly on East Seventh Street, a graveled roadway. It is conceded *349 that the intersection of Avenue S and East Seventh Street is uncontrolled by ordinance, stop sign or semaphore signal. All litigants further agree that even though Avenue S is a paved and heavily traveled street and East Seventh Street is a lightly traveled gravel thoroughfare, the latter street, nevertheless, enjoys the right of way predicated upon the rule that where an intersection is otherwise uncontrolled the motorist approaching from the right is entitled to preference.
Excepting the speed of the station wagon there is little controversy concerning the facts surrounding the accident. As plaintiff, Fletcher Anderson, approached the intersection proceeding southerly along Avenue S at a speed of approximately 20-25 miles per hour, Miss Adams was simultaneously driving easterly along East Seventh Street at a speed which the trial court found to be in excess of the lawful limit of 30 miles per hour. The taxi had virtually negotiated the intersection when it was struck on its right rear fender and bumper by the station wagon.
According to the driver of the taxi, he was proceeding at a speed of 20-25 miles per hour and did not see the approaching station wagon until he reached the intersection. Anderson testified that because of the presence of a house and shrubbery at the northwest corner of the intersection his view of traffic proceeding easterly along East Seventh Street was impeded until he was very near the intersection. At some distance from the corner there was a point at which he could see behind the house and through the trees and though he observed for traffic at this point he detected none and proceeded at his aforesaid speed into the intersection. In substance, he testified that he did not see the station wagon until he proceeded into the intersection.
The version of the accident related by plaintiff, Fletcher Anderson, was substantially corroborated by the testimony of his passenger, Mary Williams, also by a disinterested spectator standing nearby, namely, Robert Harris, and finally by one Charles E. Anthaume who, driving northerly, on East Seventh Street, observed the rapidly approaching station wagon and stopped at the intersection. All of said witnesses estimated the speed of the station wagon to be between 35 and 40 miles per hour.
Defendant Gwen Adams George testified that she was proceeding easterly along East Seventh Street at a speed estimated at from 10 to 15 miles per hour. She was in a strange and unfamiliar part of town and was in fact "lost". It is frankly conceded that she was unaware she was approaching an intersection with heavily traveled Avenue S. She did not observe the approach of the taxi until she was two or three car lengths distant from the intersection at which time she forcibly applied her brakes but was unable to stop in time to avoid striking the car as previously shown. According to Miss Adams, she did not see the Anthaume vehicle despite the fact it was stopped at the intersection facing in a northerly direction. Miss Adams' account of the accident was corroborated in its essential details by the testimony of her acquaintances, Cynthia Paul and Sharon Borde, who were passengers in the station wagon.
Our learned brother below found that the taxi had preempted the intersection and, in view of the circumstances shown, we deem his ruling in this regard to be eminently correct. Conceding the station wagon possessed the right of way, the evidence leaves little room for doubt but that the cab entered the intersection well in advance of the oncoming station wagon. At the time of his entry into the intersection Anderson was traveling well within the legal speed limit of 30 miles per hour. It further appears that because of the obstruction of his view in the direction from which the station wagon was approaching it was difficult for him to observe the approach of the other vehicle until he was almost into the intersection itself. From this appellants argue that Anderson was guilty of negligence in proceeding into the intersection.
*350 This conclusion, however, does not necessarily follow. It must be borne in mind that Anderson was traveling upon a paved, heavily traveled street well within the legal speed limit. Before reaching the intersection he had, at a point at which he could see a portion of the street to his right, looked and observed no oncoming traffic. He then continued along at a lawful rate of speed and had almost completed the intersection when struck by the station wagon traveling at an excessive and unlawful rate of speed. It appears that Miss Adams and her companions were in fact "lost"; all were unfamiliar with the area in which they found themselves and further that they were talking at the time and not particularly attentive to traffic. Miss Adams' testimony indicates that she did not see the Anthaume vehicle despite the fact that the driver thereof had stopped south of the intersection upon noting the approach of the station wagon at what Anthaume considered to be a reckless rate of speed. Learned counsel for appellant also contends that if Anthaume observed the station wagon, plaintiff, Anderson, should also have detected its approach and was negligent in not doing so. The conclusion urged is not supported by the evidence of record. Anthaume's testimony shows that approaching the intersection from the south his view to his left was such that he could see the station wagon a considerable distance away. Learned counsel for appellant has cited numerous cases dealing with intersectional collisions in which the driver approaching an uncontrolled intersection from the left has been held to have been at fault and urges that the cited decisions are controlling herein.
Conceding the obvious recent tendency of the courts to favor the motorist having the right of way and place an increasingly heavy burden of exculpation on the driver proceeding along the inferior street, see Randall v. Baton Rouge Bus Co., 240 La. 527, 124 So.2d 535 and Noonan v. London Guarantee and Accident Company, La.App., 128 So.2d 918, it is nevertheless basic law that each case of this nature must be determined in the light of its own peculiar facts and circumstances.
The statutory rule of right of way herein relied upon by appellants is applicable only in those instances wherein the driver proceeding from the right does so in a lawful manner. In the case at bar there is no question but that the taxi entered the intersection well ahead of the oncoming station wagon. While it is quite true that had Miss Adams been traveling at a lawful rate of speed and had she noted the presence of the cab approaching the intersection, she would have been entitled to assume that it would respect her right of way. Such, however, is not the case. Firstly, Miss Adams did not note the presence of the taxi until it was virtually in the intersection and secondly, she noted its presence when she was yet some distance from the intersection and traveling at an excessive rate of speed. Under such circumstances she was not entitled to assume it would yield the right of way and had she been traveling within the lawful speed limit it is evident the accident would never have occurred for it appears beyond question that but for the excessive speed of the station wagon, plaintiff's vehicle would have cleared the intersection without incident. We believe the instant case falls within the rule established by Keith v. Royal Indemnity Company, La.App., 90 So.2d 534, in which excessive speed on the part of the driver approaching from the right was held negligence constituting the proximate cause of an intersectional collision.
We are of the opinion the learned trial court properly held that plaintiff Fletcher Anderson properly preempted the intersection and that the sole proximate cause of the accident was the negligence of Miss Adams in traveling at an excessive rate of speed.
We next consider the alleged liability of American Insurance Company, insurer of the Henderson station wagon, and that of State Farm Mutual Automobile Insurance Company, insurer of the Studebaker Lark *351 owned by Percell Adams but not involved in the collision.
Defendant State Farm earnestly contends that the trial court erred in casting it in damages under the "drive other cars provision" of the policy covering the Studebaker Lark owned by defendant, Percell Adams, and which said automobile was not involved in the accident in question. In this regard counsel for State Farm maintains that if Miss Adams be held guilty of negligence constituting the sole proximate cause of the accident, defendant American should be held primarily liable under the omnibus provision of its policy covering the station wagon which was being driven by Miss Adams at the time of the accident and the liability of State Farm should be held to be secondary or "excess liability" only. Based on this assumption counsel for State Farm argues that liability upon the part of said insurer should be decreed only in the event the coverage of American is insufficient to discharge the judgments rendered in favor of plaintiffs.
Defendant, American, resists all attempts to cast it herein on the ground that under the circumstances attending this case there was no coverage afforded the driver of the insured station wagon under the omnibus clause of the policy covering said vehicle. The policy in question appears in the record and is shown to be a standard Family Automobile Policy containing, inter alia, the following clauses and provisions:
"The following are insured under Part I:
"(a) With respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile, provided the actual used thereof is with the permission of the named insured; * * *.
"Under Part I:
"`named insured' means the individual named in item 1 of the declarations and also includes his spouse, if a resident of the same household; * * *."
The precise question presented is whether under the foregoing omnibus clause of American's policy, Gwen Adams George, driver of the station wagon at the time of the accident, was an insured thereunder, and more particularly, whether Miss Adams was driving said vehicle with the permission, express or implied, of the named insured, Mr. or Mrs. Henderson. In this connection counsel for American relies exclusively upon Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734, as authority for the proposition that the permission contemplated by the aforesaid omnibus clause may be granted by or emanate only from the named insured.
Prior to the Supreme Court's decision in Rogillio v. Cazedessus, supra, the law of this state concerning coverage of a third party or second permittee under an omnibus clause appears well summarized in the following language appearing in Longwell v. Massachusetts Bonding & Ins. Co., La. App., 63 So.2d 440:
"It appears that one who has been given permission by the named insured to use the automobile can delegate this authority to a second permittee so as to bring the use of the automobile by this person within the protection of the policy if permission has been expressly given by the named insured to make such delegation. However, an original permittee who has been given permission to use the automobile but has been expressly forbidden to delegate this authority cannot do so, and the use of the car by a second permittee in violation of the named insured's express order is not within the protection of the policy. And an original permittee who has been given permission to use the car cannot, according to the great weight of authority, delegate this authority to a second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission, is silent *352 as to the question of delegation of authority. But the initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. This is the case if the original permittee is riding in the car or if the car is driven in his interest or for a purpose mutual to him and the second permittee. * * *"
Under varying circumstances the second permittee or third party was held to have the "implied consent of the named insured". In Perrodin v. Thibodeaux, La.App., 191 So. 148, it was held that a truck belonging to a police jury of a particular parish and entrusted to the general care of a parish employee, Thomas Thibodeaux, and being driven by Thibodeaux's son, Russell, with the father's consent, was being operated with the permission of the named insured.
In Donovan v. Standard Oil Co. of Louisiana, La.App., 197 So. 320, a truck belonging to defendant was loaned by defendant's bulk plant manager, Edwards to one Jones who was the employee of Taylor who operated a nearby Standard Oil service station. Upon securing the truck from Edwards, Jones instructed his co-employee Grigsby to drive the vehicle and an accident ensued while Grigsby was operating the truck. Grigsby's use thereof under the circumstances shown was said to be with the permission of the named insured.
The same result was reached in Boudreaux v. Cagle Motors, La.App., 70 So.2d 741, wherein one Monticello was loaned an automobile by defendant while Monticello's own vehicle was undergoing repairs in defendant's garage. Monticello's son was involved in an accident while driving the vehicle and was held to be operating the vehicle with the permission of the named insured.
In Thomas v. Peerless Insurance Company, La.App., 121 So.2d 593, the question was omnibus clause coverage of one Berry who was driving a vehicle owned by Tugwell (an automobile sales lot owner) and loaned by Tugwell's employee, Adcock, to Berry contrary to Tugwell's express instructions. Berry was held to be insured under the omnibus clause on the theory that Adcock was given more or less general control of the vehicle and Berry's use thereof (trying out the vehicle as a prospective purchaser) served the owner's purpose, benefit and advantage.
The rationale of the rule formulated by the decisions preceding Rogillio v. Cazedessus appears to be that in those instances wherein the initial permittee is given more or less general use and control of a vehicle, in the absence of instructions from the named insured prohibiting its use by a third party, permission given the initial permittee may "carry over" and be granted to a third party who is held to have the "implied permission" of the named insured. Though granted general use and control of a vehicle, if the initial permittee were expressly prohibited from extending use to a third party, permission cannot be delegated or transmitted to a third party. Coco v. State Farm Mutual Automobile Insurance Co., La.App., 136 So.2d 288. The rule, however, is different where the use of the vehicle by the second permittee though contrary to the express wishes of the named insured, served some purpose, advantage or benefit of the named insured. Under such circumstances "permission" is held to carry over. See Thomas v. Peerless Insurance Company, supra.
In those instances wherein the use granted the initial permittee was restricted and conditional, permission cannot be delegated or transmitted by the initial permittee to a second permittee. Longwell v. Massachusetts Bonding & Ins. Co., La.App., 63 So. 2d 440.
It is the contention of esteemed counsel for American, however, that Rogillio v. Cazedessus, supra, has changed the previously established jurisprudence to the *353 effect that coverage under such omnibus clauses is afforded only in instances wherein permission to use the insured vehicle is granted by the named insured. Although certain pronouncements in the Rogillio case seem to lead to the interpretation urged by learned counsel for American, we do not view the case as so holding.
In the Rogillio case the contention was made that under the policy (the terms of which are identical with those herein involved) every member of the household of the named insured was insured and, as such, needed no permission of the named insured to be protected. The Supreme Court therein stated that since young Oliver was in fact an insured the finding of the trial court and of this court of appeal to the effect that the Oliver lad had been given permission to use the car was immaterial because he was in fact not a permittee within the meaning of the omnibus clause. Having found that the Oliver boy was not a permittee, the court then considered whether the evidence showed initial permission from the named insured to the Cazedessus youth and finding no such permission, either express or implied, denied coverage. The language of the decision is, in our judgment, somewhat confusing but taken as a whole we interpret it to mean that a person taking possession of a vehicle from a person other than an initial permittee must, to attain coverage under the omnibus clause, show permission, express or implied, from the named insured.
We believe our analysis of the Rogillio decision to be supported by the following excerpts therefrom:
"The sole issue is whether young Oliver without knowledge of the named insured could by his actions constitute another person a permittee so as to place responsibility for the ensuing damage on the liability insurer of the car's owner. Resolution of this question depends upon the construction to be given a clause in the policy with reference to the facts of this case.
"The contracts of insurance issued by Fidelity & Casualty Company, by Western Assurance Company and by St. Paul Fire & Marine Insurance Company are of the type known as standard Family Automobile Policy. Under "Part ILiability" there is a subdivision headed "Persons insured" which declares: "The following are insureds under Part I: (a) With respect to the owned automobile, (1) the named insured and any resident of the same household, (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured; * * *." There is also a subdivision "Definitions Under Part I" containing the following statements: "Under Part I: `named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household; `insured' means a person or organization described under `Persons Insured'; `owned automobile' means a private passenger * * * automobile * * * owned by the named insured * * *." (Italics ours.) In the policy issued by Fidelity & Casualty Company of New York (see footnote 2), "Item 1" of the "declarations page" states: "Named insured: William J. Oliver, Jr." The above provisions are controlling with respect to the liability, if any, of that company.
* * * * * *
"For their part, counsel for Western Assurance Company and St. Paul Fire & Marine Insurance Company contend that under the explicit terms of the policy every resident of the household of William J. Oliver, Jr. was as much an insured as was the named insured; that none of these household residents needed the permission of William J. Oliver, Jr. in order to be protected as an insured while operating the vehicle or as a prerequisite for those injured by his negligent operation of the vehicle to recover against the insurer; * * *.

*354 "We think correct the assertion referred to in the paragraph above that young Oliver, a resident of the same household as the named insured, was himself an insured according to the plain terms of the policy; it follows that the finding of the courts that permission to use the car had been granted to him by his father was without applicability and that he was not a "permittee" within the meaning of the omnibus clause. But this does not profit Western Assurance and St. Paul Fire & Marine because under the express wording of the policies, only the named insured or his spouse occupying the same household may constitute one a permittee and thus afford him coverage. Needless to say, neither Mr. nor Mrs. Oliver granted Michael Cazedessus permission of any kind. He was therefore not afforded coverage under the clause "any other person using such automobile." The result sought by counsel for the said insurance companies would do violence to the provisions of the policy, which are clear and unambiguous. The contract is the law between the parties, and we are not authorized under the guise of construction to change it."
Our interpretation of the Rogillio case is believed further supported by the fact that after making the hereinabove quoted pronouncements, the Court therein proceeded to distinguish Brooks v. Delta Fire & Casualty Company, La.App., 82 So.2d 55 and Garland v. Audubon Insurance Company, La.App., 119 So.2d 530, in terms which we believe compatible with our hereinabove stated interpretation of Rogillio v. Cazedessus. We observe that the Court distinguished the Brooks case, supra, on the ground that coverage was therein extended the driver under the omnibus clause on the basis of the implied consent of the named insured under the circumstances therein shown, namely, the knowledge of the named insured that the driver at the time of the accident was to accompany the daughter of the named insured. The court pointed out also that in the Brooks case liability was predicated not upon the driver being a permittee of an original or initial permittee but upon the fact that the named insured, knowing of her presence in the vehicle, impliedly consented to her driving under the circumstance of the slight emergency shown to have occurred.
In considering the Garland case, the Supreme Court observed that liability therein was predicated upon the ground that permission from the wife of the named insured (to whom the insured vehicle was entrusted by the named insured) was, under the circumstances shown, for all intents and purposes permission of the named insured himself.
Since the advent of the Rogillio case our brothers of the Second Circuit have had occasion to consider this perplexing problem in Hurdle v. State Farm Mutual Automobile Ins. Co., La.App., 135 So.2d 63, which involved a case wherein the owner of the vehicle (Nicholson) loaned his car to one Smith who in turn loaned it to Bailey who was involved in an accident. In holding the insurer of the Nicholson vehicle liable under the omnibus clause for the damage caused by Bailey, our brothers of the Second Circuit concluded that the Supreme Court in Rogillio v. Cazedessus, did not establish the rule that express permission must be obtained from the named insured. We readily agree with the statement in the Hurdle case to the effect that the Supreme Court did not therein change the jurisprudence with respect to the effect of implied permission from the named insured. We note that in the Hurdle case our esteemed brothers then proceeded to consider the circumstances attending Bailey's use of the automobile and found that Smith, the initial permittee, was granted unlimited use and control of the vehicle and, therefore, was given implied permission to lend it to another. The Hurdle case simply held that an initial permittee was given unlimited control and use of the vehicle which carried with it implied permission to transmit such *355 permission to a third party. Such holding we believe in conformity with all prior jurisprudence.
The language hereinabove cited from the Supreme Court decision of Rogillio v. Cazedessus indicates, in our opinion, that the basis of the decision was the finding that young Oliver's permission was a matter of no moment since the Supreme Court found that he was not a permittee. In this regard we reiterate the language upon which our interpretation is predicated, namely:
"* * * it follows that the finding of the courts (meaning the trial court and this court of appeal) that permission to use the car had been granted to him (meaning young Oliver) was without applicability and that he was not a `permittee' within the meaning of the omnibus clause. * * *" (Emphasis supplied.)
We believe that what the Supreme Court meant by the hereinabove quoted language was that the character of young Oliver's permission was not general and unrestricted and had not been shown to be such that it empowered him to transmit it to a second permittee. It was in this sense that the court concluded the Oliver lad was not a "permittee" and that permission from him to the Cazedessus boy was of no relevancy because, under the circumstances, permission, express or implied, could not flow through him from the named insured. Any other interpretation of the Supreme Court's holding in the Rogillio case, we believe, would lead to absurd consequences as we shall hereinafter attempt to demonstrate.
To hold as counsel for American urges is to interpret the Rogillio decision to mean that under no circumstances can permission, express or implied, of the named insured flow through an insured to a second permittee or third party. The effect of such a holding is to arbitrarily declare that in every case, irrespective of attending circumstances, an insured shall be considered a nonconductor of permission insofar as concerns the named insured. Such rule would prohibit, without reservation, qualification or exception, every insured from transmitting permission, express or implied, of the named insured even though his use be general, uncontrolled and without limitation by the named insured with respect to authority to extend use of the vehicle to other persons. If such result were intended by the Rogillio case, we believe the decision would have the effect of completely overruling prior jurisprudence to the effect that where one is given unrestricted use of a vehicle, without limitation of his right to extend such use to others, his granting of the use thereof to a third party is deemed to be with implied consent of the named insured. We believe this to be so for the reason that if the effect of the ruling in the Rogillio case were that in no event can an insured convey permission, it fails to distinguish between those instances wherein the insured is using the vehicle and is covered merely because he is an insured and those cases in which, although an insured, he is using the vehicle with the permission of the named insured. To illustrate, in the Rogillio case, the Oliver lad was an insured and he personally was covered even though he may not have had permission of the named insured to use the vehicle. Furthermore, as an insured he was personally covered even though he may have been using the vehicle contrary to the expressed wishes, desires and instructions of the named insured, because as an insured, he was protected by his mere use and operation of the vehicle. It is quite another thing to say, however, that if he were using the vehicle with the consent and permission of the named insured that he could not, under any circumstances, transmit such permission to another. If the insured does in fact have permission of the named insured to use the vehicle, we see no valid reason why the mere fact that he is also an insured should prevent his acting as an agent through whom permission of the named insured might flow. If the insured is in fact using the vehicle with the permission of the named insured, *356 the question then becomes a matter of whether the nature and character of the permission granted him by the named insured is such that the initial permission of the named insured may be delegated or transmitted to a third party with the express or implied consent of the named insured. The effect of the third party's use is then considered in the light of all attending facts and circumstances which determine whether in each particular case the third party's use of the vehicle is with the express or implied consent of the named insured.
We believe, therefore, the scope of the Rogillio case is, in essence, limited to the proposition that an insured may not grant initial permission within the meaning and intendment of the term "permission" as used in the omnibus clause, such right of initial or original permission being reserved exclusively to the named insured. We are of this opinion for we detect no language in the Rogillio case indicative of intention to completely bar transmission of initial permission granted by a named insured solely on the ground that the initial permittee is also an insured under the policy. We are further fortified in this conclusion by the following language appearing in the Rogillio case, supra:
"* * * We have shown that initial permission was lacking in the instant case, and no useful purpose would be served in attempting to explain what the courts may have said under widely differing factual situations, in pursuing the logic of the particular rule applicable to the matter under discussion."
We take the foregoing language to mean that since there was no showing that the character of young Oliver's permission to use the vehicle was such as, under the jurisprudence, conferred upon him the power of transmitting or delegating same to a subsequent permittee, there was in fact no initial permission by the named insured consequently none could have been delegated to the Cazedessus lad. The court concluded in effect, as we understand the language employed therein, that lacking a showing of initial permission from the named insured any permission which an insured may have granted was of no consequence and no coverage attached to the use of the vehicle by Cazedessus.
Addressing ourselves to the facts of the instant case, the record establishes that the use of the station wagon granted Catherine Henderson by her parents (the named insured) did not encompass more or less general discretion and control in the use and operation thereof, but rather was limited and restricted. It appears that Miss Henderson (a 17 year old high school senior) was given the use of the vehicle on Wednesday of each week for the purpose of attending school and, upon leaving school at approximately 3:15 P.M., driving to a point within the city where she was given vocal lessons. Her instructions were to use the vehicle solely for the purpose of going to school, driving to the music lesson and upon completing her music lesson driving directly home. On the date of the accident, Miss Henderson drove the vehicle to school and during the noon hour used it to transport herself and friends to a nearby cafe or restaurant for lunch, contrary to the express directions of her parents. Upon returning to school after lunch, it was discovered that classes had commenced and that all of the girls (excepting Miss Henderson who had a gym class at that hour) would be recorded as late or absent. Miss Henderson elected to meet her gym class but her companions decided to "take the afternoon off" and were given permission to ride around in the station wagon but were expressly admonished not to use all of the gas in the vehicle and also to confine their outing to the back streets of the city so that neither of Miss Henderson's parents would detect them using the vehicle. When Miss Henderson delivered possession of the car to her associates at the school, a classmate, Cynthia Paul, was driving. Miss Paul drove the car for a time and then surrendered the wheel to Miss Adams who was operating the vehicle at the time *357 of the accident. Catherine Henderson was not present in the vehicle at the time of the accident. Although neither Mr. nor Mrs. Henderson would state that they expressly forbid their daughter to permit others to drive the car, their testimony clearly shows that they did not expressly permit her to allow its use by any other person. The testimony as a whole shows beyond any possible doubt that Catherine Henderson was fully aware of the limitations placed upon the use of the vehicle by her parents. She was fully cognizant that her mother and father would object to her permitting her friends to drive the vehicle around the city and it was this knowledge which prompted her to instruct them to drive only in those areas of the city where they were not likely to be seen by her parents. The aforesaid instruction by Miss Henderson was readily conceded by all occupants of the vehicle. The foregoing leads to the inescapable conclusion that Miss Henderson's friends were well aware that they had neither the express nor implied consent of Mr. or Mrs. Henderson to drive the vehicle in question.
It follows that Miss Adams was not an insured under the omnibus provision of the policy and that the trial court correctly rejected plaintiffs' demands against defendants, James Henderson and American Insurance Company.
The contention is made by State Farm that if there is no coverage under the policy of American on the ground that Miss Adams was not using the station wagon with the express or implied consent of James Henderson, then and in that event, there is no liability on the part of State Farm under the "drive other cars" clause under its policy covering the Studebaker Lark owned by its insured, Percell Adams.
The pertinent provisions of State Farm's policy reads as follows:
"Persons Insured. The following are insured under Part I:

* * * * * *
"(b) With respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner * * *.

* * * * * *
"Definitions Under Part I:
"`relative' means a relative of the named insured who is a resident of the same household;
* * * * * *
"`non-owned automobile' means an automobile or trailer not owned or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;
"`private passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile; * * *." (Emphasis supplied.)
Applying the foregoing policy provision to the facts of the instant case leaves little room for doubt or argument but that the Henderson station wagon was a non-owned automobile with respect to the policy issued to State Farm's insured, Percell Adams. Gwen Adams George was in fact a relative of the insured considering the evidence shows she was his 17 year old unmarried daughter residing with her said parent at the time of the accident. The contention that under the facts and circumstances Miss Adams was not insured under the State Farm policy for the reason that she was not using such other vehicle with the permission of the owner thereof, appears well taken. We have hereinabove discussed the question of the alleged permission of the owner of the station wagon and concluded that Miss Adams did not have permission of Mr. or Mrs. Henderson, either express or implied. The same rule and reasoning *358 must, perforce, be applied with respect to the alleged permission of the "owner" in the "drive other cars" or "non-owned car" clause of the policy covering the Adams vehicle as is applied to the omnibus clause in the policy covering the Henderson automobile. The proviso in clause (a) (2) of the Family Automobile Policy issued Adams is identical with that in clause (b) (2) as hereinabove set forth excepting only that with respect to the automobile owned by the "named insured" permission of the named insured is referred to whereas with respect to the non-owned vehicle permission of the "owner" is required. We discern no valid reason for distinguishing between the permission required in either instance and conclude that the jurisprudence relative to interpretation of "omnibus clauses" with regard to the issue of permission, express or implied, is applicable also to interpretation of "non-owned automobile clauses".
We are of the opinion, therefore, that there is no liability on the part of State Farm herein under the provisions of the "non-owned automobile clause" appearing in its policy issued to Percell Adams. The learned trial court's finding to the contrary is erroneous and must be reversed and set aside.
The negligence of defendant Gwen Adams George subjects her to liability in the amounts hereinafter decreed. Defendant Percell Adams is also liable for the tort of his unmarried minor daughter, Gwen Adams, considering the record reveals the latter was residing in the home of the former on the date of the accident in question. LSA-C.C. Article 2318; Pennsylvania Fire Insurance Co. v. Harrison, La.App., 94 So.2d 92.
There remains only the question of quantum.
In his brief before this court plaintiff, George Anderson, avers that he is satisfied with the judgment of the trial court awarding him damages in the sum of $552.76 in recompense for damages sustained by his automobile. The damages claimed are supported by evidence of record and the award will, therefore, be affirmed.
Appellant Fletcher Anderson, however, complains of the inadequacy of the trial court's award of damages in the aggregate of $1,500.00 representing lost wages and physical pain and suffering.
Appellant Fletcher Anderson though satisfied with the award of $344.00 allotted him by the trial court to cover special damages such as medical and hospital bills, nevertheless, complains of the inadequacy of the award of $500.00 for lost wages as well as that of $1,000.00 for pain and suffering.
As a result of the accident plaintiff Fletcher Anderson was violently ejected from his cab and thrown to the pavement with such force as to render him unconscious. Plaintiff was taken to a hospital where he was examined and subsequently released. He did not remain in the hospital as a patient for any appreciable length of time. His injuries were described by his attending physician, Dr. W. S. Harrell, as cerebral concussion, severe contusions and sprain of the right shoulder, right hip, right elbow, right knee and back. Plaintiff was under treatment by Dr. Harrell from the date of the accident, namely, April 6, 1961, until June 22, 1961. Plaintiff's treatment consisted principally of diathermy to the affected areas and injections of drugs for the relief of muscle spasm and pain occasioned by the aforesaid injuries. A bursa developed in the vicinity of plaintiff's elbow. Aspiration of the bursa (insertion of a needle thereon for the purpose of withdrawing blood tinged fluid therefrom) was necessitated on two occasions. More particularly, on May 8, 1961, and June 22, 1961, 5 and 10 c.cs. of fluid were drawn therefrom, respectively. According to Dr. Harrell a traumatic bursa of the type sustained by plaintiff, Fletcher Anderson, is quite painful. In an effort to prevent further swelling and relieve pain elastic bandages were applied to plaintiff's left elbow and *359 right knee. Although X-ray examination revealed no fracture to plaintiff's right shoulder, the contusion and sprain experienced by plaintiff in that area was, according to Dr. Harrell, quite severe and painful. In addition, Dr. Harrell considered that the headaches of which plaintiff complained were compatible with the concussion he received in the accident. Dr. Harrell testified that plaintiff visited his office approximately 36 times during April and May of 1961 and twice during June, the majority of said visits being for heat treatments.
Plaintiff stated that although he was not hospitalized he remained in bed at home for about a month except for visits to Dr. Harrell for treatments. He also testified that he wore the elastic bandage on his knee for approximately one month and that the knee remained sore and painful for about two months. He experienced severe headaches from three to four times daily for a period of approximately four months following the accident and suffered pain in his elbow for some 2½ to 3 months. In addition to the foregoing he suffered recurring back pain.
Although plaintiff has cited no authority in support of his demands for an increase in the award allotted him for pain and suffering, we have considered several of the more recent decisions which we consider somewhat analogous to the case at bar as a guide in determining the adequacy of the present award.
More particularly we refer to Jenkins v. Audubon Insurance Company, La.App., 110 So.2d 221, wherein for injuries similar to but somewhat more serious than those sustained by present plaintiff an award of $3,000.00; and to Thibodeaux v. Travelers Indemnity Co., La.App., 131 So.2d 345, wherein an award of $2,000.00 for injuries approximating those of present plaintiff was held sufficient; and finally to Jobe v. Credeur, La.App., 125 So.2d 487, wherein for injuries which appear to be less serious than those experienced by plaintiff an award of $1,000.00 was granted.
In the present case the testimony of Dr. Harrell shows that plaintiff was believed fully recovered upon the occasion of plaintiff's last visit on June 22, 1961, some two and one-half months following the accident. All circumstances of the present case considered, we believe the award to plaintiff Fletcher Anderson in the sum of $1,000.00 to be inadequate by the sum of $500.00 and it will be increased accordingly to the sum of $1,500.00.
Regarding alleged lost wages, the evidence shows that plaintiff was self-employed as a cab driver from which occupation he earned approximately $95.00 to $100.00 weekly, after expenses. Plaintiff testified that his injuries prevented his engaging in said occupation for a period of 7 weeks and counsel suggests that the award of $500.00 for lost wages allowed by the trial court be increased to $665.00. Our consideration of plaintiff's testimony regarding his income, however, shows that to some extent it was predicated upon conjecture considering he kept no record of income or expenses. Plaintiff stated that as he collected fares he pocketed the money and at times kept a portion thereof in a certain place in his home. He paid operating expenses from his receipts and each Sunday counted the money remaining. The week prior to trial he had taken in the sum of $83.00 but his testimony does not make it clear whether said sum was gross or net. In addition, his testimony indicates his average weekly expenses for gasoline and oil amounted to approximately $30.00. He attributed the previous week's earnings of only $83.00 to the fact that a strike at a local plant resulted in a slump in his business. Predicated upon such testimony the learned trial court awarded plaintiff the sum of $500.00 in compensation for lost wages. In view of the circumstances shown, we see no reason to increase the award for this item of damages.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed that the judgment of the trial court casting defendant State Farm Mutual Automobile Insurance *360 Company in damages herein be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and judgment rendered herein in favor of plaintiff, Fletcher Anderson, and against defendants, Percell Adams and Gwen Adams George, jointly and severally and in solido in the full sum of Two Thousand Three Hundred Thirty-four and 00/100 ($2,334.00) Dollars.
It is further ordered, adjudged and decreed that in all other respects the judgment of the trial court is affirmed at the cost of appellants, Percell Adams and Gwen Adams George.
Reversed in part, amended and affirmed.