LOTTINGER, Judge.
This is an appeal by defendants, the Board of Supervisors of Louisiana State University (LSU), Continental Insurance Company (Continental), and Fidelity and Casualty Company of New York (Fidelity), from the granting of summary judgment in favor of plaintiffs, Rolf and Andrew E. “Eric” Schroeder, and plaintiffs in intervention, Safeco Insurance Company (Safe-co), and Continental Casualty Company (CNA). In granting summary judgment the trial court held that Andrew E. “Eric” Schroeder was an additional insured under the policies of insurance issued by the defendant insurers to LSU, and that those policies provided coverage to the Schroe-ders for any liability incurred by them as a result of the auto accident which is at the crux of these proceedings.
PROCEDURAL HISTORY
The instant consolidated proceedings are the offspring of litigation which arose out of an automobile accident in which a young woman was seriously injured. Following the accident the young woman, Ms. Lee, and her parents (the Lees) sued the driver *1076 of the other vehicle involved, Eric Schroeder, and his parents,[1] together with the Schroeder’s liability insurer and their own (the Lee’s) underinsured motorist carriers, Safeco and CNA.
After a trial on the merits, a judgment in excess of one and a half million dollars was rendered in favor of the Lees and against the Schroeders and their liability insurer, and Safeco and CNA as the Lee’s underin-sured motorist carriers. Safeco and CNA ultimately paid the lion’s share of this judgment and obtained a third party judgment against the Schroeders in that amount. We modified and affirmed these judgments on appeal. Lee v. USAA Casualty Insurance Company, 540 So.2d 1083 (La.App. 1st Cir.), writ denied, 542 So.2d 514, 515 (La.1989), reconsideration denied, 544 So.2d 384, 385 (La.1989).[2]
The Schroeders then filed the first of the instant consolidated proceedings against LSU, Continental and Fidelity, alleging that LSU was vicariously liable through Eric Schroeder for Ms. Lee’s injuries. Safeco and CNA intervened to recoup from LSU the amounts they paid to the Lees.
The Schroeders then brought a separate declaratory judgment action against Continental, Fidelity, and LSU seeking to have Eric Schroeder declared an additional insured under the business auto policies issued to LSU by Continental and Fidelity. Safeco and CNA again intervened asserting that if Eric Schroeder is covered under Continental’s and Fidelity’s policies for his liability to the Lees, then he is not underin-sured, and therefore, since their (Safeco and CNA) liability is only as underinsured motorist carriers, they should not have been held liable to the Lees and are entitled to reimbursement from LSU’s insurers. The vicarious liability and declaratory judgment actions were then consolidated.
The Schroeders, Safeco, and CNA then filed a joint motion for summary judgment, seeking to have Eric Schroeder declared an additional insured and covered for his liability stemming from the accident under the Continental and Fidelity policies issued to LSU.[3] LSU, Continental, and Fidelity responded with a cross motion for summary judgment, seeking a declaration that Eric Schroeder is not covered under their policies. These cross motions for summary judgment were decided in favor of the Schroeders, Safeco, and CNA and against Continental, Fidelity, and LSU, who then perfected the instant appeal.
FACTS
On Saturday, October 29, 1983, Erie Schroeder drove his father’s car to “Sadie Hawkins Day” at the University Laboratory School (U. High) on the LSU campus in Baton Rouge.[4] On the way to the event he picked up Bradley Aucoin, a classmate. Eric then purchased a six pack of beer and two hamburgers before proceeding to school. When the boys, who were both seniors at U. High, arrived at the school at approximately 12:30 p.m., they remained in the parking lot while Eric drank several of the beers and ate the hamburgers. The *1077 boys then participated in the “Sadie Hawkins Day” events.
“Sadie Hawkins Day” is an annual fund raising event for the senior class at U. High. It is an official school sponsored event. U. High teachers supervise and act as chaperons, and all of the school’s rules and regulations apply and are enforced by the teachers present. “Sadie Hawkins Day” consists of two separate events: a carnival from approximately 2:00 p.m. until 5:00 p.m., and a dance from 8:00 p.m. until 11:30 p.m. Students from grades 6 through 12 can participate in the carnival activities during the day, and students in grades 9 through 12 can participate in the dance.
Since the purpose of these events is to raise funds for the senior class, all of the senior class members are required to participate and are assessed a fine for not doing so. The senior class is responsible for most of the planning, setting up, decorating, and other “legwork” necessary for the event, but all plans and assignments are first approved by U. High faculty member “sponsors,” of which there were four for this particular “Sadie Hawkins Day”.
Near the end of the carnival part of the event, Ms. Gayle Ater, a teacher at U. High, senior class sponsor, and LSU employee, asked Bradley Aucoin if he knew which student was supposed to get the ice for the dance that evening. Bradley did not know, but volunteered to go and get it. Ms. Ater gave him money from the event funds to buy the ice and directed him to get the ice from an ice house several miles away.[5] Ms. Ater assumed that Bradley would use a vehicle to get the ice, but did not know what vehicle he would use.
Bradley then asked Eric to take him to get the ice. Ms. Ater did not know that Eric was going with Bradley to get the ice or that they were going in Eric’s father’s car. However, Ms. Ater stated that she would not have had any objection to Eric going with Bradley if she had known of it. Ms. Ater did not know that Eric drank beer prior to the day’s events.
On the way back to school after picking up the ice, Eric and Bradley stopped and bought another six pack of beer. As they were returning to school with the ice, the accident which forms the basis, of liability in this suit occurred.
THE INSURANCE POLICIES AT ISSUE
Continental’s business auto policy issued to LSU and in effect at the time of the accident here at issue provides that Continental will pay all damages the insured is legally liable for arising from an accident resulting from the ownership, maintenance, or use of a covered auto. It provides coverage up to five hundred thousand dollars ($500,000.00) for liability purposes. Specifically this policy provides under “Part IV— Liability Insurance”:
A. WE WILL PAY.
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
For liability purposes this policy defines covered auto as “any auto.” Therefore, the dispositive issue is whether Eric Schroeder is an insured within the meaning of the policy.
Part IV(D) of the policy defines an insured for liability purposes as follows:[6]
D. WHO IS INSURED.
1. You are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:
a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.
*1078 b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.
c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
3. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own.
Under the terms of this policy, Eric Schroeder is an insured for liability purposes if he was driving an auto borrowed by LSU, and he had LSU’s permission to do so.
The policy issued by Fidelity to LSU is a “form following” umbrella policy with limits of twenty million dollars ($20,000,-000.00) over the limits of the underlying policies listed therein. Continental’s policy is listed as an underlying policy in the Fidelity policy. Therefore, if Eric Schroeder is an insured under the Continental policy, then he is also insured under the Fidelity policy.
ISSUES ON APPEAL
The trial court granted summary judgment in favor of the Schroeders, Safeco and CNA, holding that Eric Schroeder was an insured under the Continental and Fidelity policies for his liability arising out of the accident at issue. The trial court denied appellants’ cross motion for summary judgment on the same issue. LSU, Continental and Fidelity have appealed, arguing that the' trial court erred in granting summary judgment because genuine issues of material fact existed; or alternatively, that the trial court erred in finding that LSU borrowed the Schroeder vehicle or gave permission to Eric Schroeder to drive it, and, therefore, summary judgment should have been granted in their favor.
SUMMARY JUDGMENT
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. The burden of proving that there is no genuine issue of material fact in dispute is upon the mover. Asian International, Ltd. v. Merrill Lynch, Pierce, Fen-ner and Smith, Inc., 435 So.2d 1058 (La.App. 1st Cir.1983); Munson v. Safeco Insurance Company, 411 So.2d 578 (La.App. 1st Cir.1982). Any doubt concerning the existence of genuine issues of material fact should be resolved against the granting of summary judgment as it is no substitute for a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
In order to prevent the rendition of summary judgment, allegedly disputed issues must be both genuine and material. Formal allegations without substance or disputed issues which are patently insubstantial are not genuine issues that will preclude summary judgment. Aydell v. Charles Carter and Company, Inc., 388 So.2d 404 (La.App. 1st Cir.), writ denied, 391 So.2d 460 (La.1980); Jones v. American Bank and Trust Company, 387 So.2d 1360 (La.App. 1st Cir.1980); City of Baton Rouge v. Cannon, 376 So.2d 994 (La.App. 1st Cir.1979).
A fact is material if it is essential to plaintiff’s cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigants’ ultimate success, or determine the outcome of a legal dispute. Eads Operating Company, Inc. v. Thompson, 537 So.2d 1187 (La.App. 1st Cir.1988), writ denied, 538 *1079 So.2d 614 (La.1989); Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La. App. 2nd Cir.1984); Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2nd Cir. 1983). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can only be seen in the light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5th Cir. 1988); Williams v. South Central Bell Telephone Company, 516 So.2d 1309 (La.App. 2nd Cir.1987); Sanders, 438 So.2d at 717.
The appellants contend that there are two disputed material issues of fact which should have precluded the granting of plaintiffs motion for summary judgment. Appellants first contend that there is a dispute over whether the Sadie Hawkins Dance was a school sponsored event and whether the act of obtaining ice benefitted LSU.[7] Appellants point to their answers to interrogatories and requests for admission as evidence of this dispute.[8]
However, it is abundantly clear from the depositions of Ms. Ater, Mr. Fox and Mr. Smith,[9] all witnesses controlled by the appellants, that the Sadie Hawkins Day events were indeed school sponsored events and that obtaining the ice did in fact benefit LSU.[10] Additionally, at the hearing on the cross motions for summary judgment, the attorney representing the appellants admitted that the Sadie Hawkins Day events were school sponsored. Therefore, these allegedly disputed factual issues are patently insubstantial and will not preclude summary judgment.
The appellants next contend that there is a dispute concerning whether Ms. Ater knew that Eric Schroeder was going with Bradley Aucoin to get the ice or that the Schroeders’ ear would be used. The appellants are correct. There is a factual dispute over whether Ms. Ater knew that Eric Schroeder was going to get the ice in his father’s car. The deposition testimony of Eric Schroeder, Bradley Aucoin, and Gordon McKernan, another U. High student, indicates that Ms. Ater did know that Eric was going to get the ice. Ms. Ater’s deposition testimony, on the other hand, is that she did not know these things.[11]
Appellees admit that this is a disputed issue. However, they contend that it is not a material issue. Indeed, at the hearing on the motions for summary judgment, the appellee’s attorney stated that he was going to accept the facts least favorable to appellees, and maintained that on the basis of those facts, i.e. that Ms. Ater did not know Erie Schroeder was going with Bradley Aucoin or what car was going to be used, that summary judgment in favor of plaintiffs was appropriate.[12]
*1080 As stated above, the law applicable to the plaintiffs cause of action determines whether a fact is material or not. In this case the question to be answered is: were the plaintiffs entitled to judgment as a matter of law given the facts as stated most favorably to appellants, i.e. that Ms. Ater did not know that Eric Schroeder was going to get the ice or that the Schroeder’s vehicle was going to be used? [13]
If the trial court was incorrect as a matter of law in holding that there was coverage under the insurance policies at issue given the facts as stated by the appellants, but such a ruling would be correct given the facts as testified to by Eric Schroeder, Bradley Aucoin, and Gordon McKernan, then summary judgment was not proper, as this dispute would be over material facts. However, if the trial court was correct as a matter of law in holding that there was coverage under the policies at issue given the facts as stated by appellants, then the disputed facts are not material and summary judgment was appropriate.
DID LSU “BORROW” THE SCHROEDER VEHICLE?
In order for Eric Schroeder to be considered an insured under the policies at issue, LSU must have borrowed the Schroeder vehicle. The trial court held that since “borrow” was not defined in the policy, and that since it is susceptible of more than one meaning, it must be interpreted liberally in favor of coverage. The trial court then interpreted the word “borrow” to mean gaining the use of something, whether or not exercising dominion or control. Based on this interpretation of borrow, the trial court held that LSU borrowed the Schroeder vehicle when Ms. Ater sent Bradley Aucoin to get the ice because she knew that a vehicle would be used for the benefit of LSU.
The appellants object to the liberal construction rule used by the trial court. They contend that although as a general rule ambiguous provisions should be interpreted against the insurer, the rule does not apply when determining who is an insured under the policy. They claim that an exception is made in the case of a third party to the insurance policy and that the rule of liberal construction does not apply to those not insured under the policy. Appellants cite only Federal and out of state cases in support of this proposition.
A review of the applicable Louisiana law and jurisprudence reveals that undefined words in an insurance policy are generally accorded their prevailing meaning and usual significance. La.Civ. Code art. 2047. However, if a word is susceptible of more than one meaning it must be understood in the sense that renders the obligation effective, and doubtful or ambiguous language is construed against the insurer and in favor of coverage. La.Civ.Code art. 2049; Credeur v. Luke, 368 So.2d 1030 (La.1979); Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953).
We can find no support for an exception to this rule when determining whether one is an insured under the terms of an insurance policy. In fact, we have found several cases where the liberal interpretation rule was used to determine whether or not a person is an insured under an insurance policy. Westerfield v. LaFleur, 493 So.2d 600 (La.1986); McLemore v. Fox, 565 So.2d 1031 (La.App. 3rd Cir.), writ denied, 569 So.2d 966 and 968 (La.1990). The trial court was correct to use the rule of liberal construction.
The appellants next object to the meaning given to the word “borrow” by the trial court. Appellants claim that in order to borrow something, the borrower must have physical possession of the thing, or dominion and control over it. Appellants cite Black’s Law Dictionary; Sturgeon v. Strachan Shipping Co., 731 F.2d 255 (5th Cir.), cert. denied, 469 U.S. 883, 105 S.Ct. 251, 83 *1081 L.Ed.2d 188 (1984); Liberty Mutual Insurance Company v. American Employers Insurance Company, 556 S.W.2d 242 (Tex. 1977); and Prudhomme v. Vancouver Plywood Co., 240 So.2d 587 (La.App. 3rd Cir. 1970); in support of this interpretation.[14]
Black’s defines “borrow” as follows: “[t]o solicit and receive from another any article of property ... with the intention and promise to ... return it_ [Receiving something from another for one’s own use.” Black’s Law Dictionary 167 (5th ed. 1979).
Sturgeon, Liberty Mutual, and Prud-homme, all address the issue of whether the unloader of a truck borrows the truck when unloading it. Sturgeon and Liberty Mutual both held that in order to be the borrower of a vehicle, use and possession are required.[15] This is one interpretation of the term “borrow.”
Although arriving at the same result, the Prudhomme court utilized the law of bailment and the civil code articles dealing with deposit to conclude that the unloader had not borrowed the truck. The pertinent policy language in Prudhomme was “bailee or borrower” and the court apparently treated this phrase as meaning only one thing and not as encompassing two distinct situations. Thus the Prudhomme case does not really define who is a borrower, but rather defines who is a bailee.
The California case relied on by the trial court, Travelers Indemnity Company v. Swearinger, 169 Cal.App.8d 779, 214 Cal. Rptr. 383 (3 Dist.1985)[16], involved an insurance policy with provisions identical to those at issue here. In that case, a school district implemented a policy whereby visiting students attending a basketball tournament were provided room and board by approved families of students of the host school. It was understood that the host family would provide transportation to and from the games. An accident occurred while the host student and a visiting student were on the way to a basketball game in the host family’s car.
The issue in Swearinger was whether the host student/driver was an insured under the school’s insurance policy. The case turned on whether the school district had “borrowed” the host family’s car. After citing the California rule of liberal construction, which is identical in theory to the rule in Louisiana, the Swearinger court examined the possible meanings of the term “borrow” in the insurance policy there at issue.[17]
The Swearinger court first noted the word “borrow” appears in the definition of “insured” and in an exception thereto. (D.2. and D.2.a. above). The court found that excluding the owner of a vehicle from the class of insured when that vehicle has been borrowed by the named insured from one of its employees or a member of his household, (D.2.a above), implies that a borrowing can occur whenever the named insured properly gains the use of a third party’s (the employee or member of his family) vehicle for its purposes, no matter who has dominion or control of the car. Swearinger, 214 Cal.Rptr. at 386.
The Swearinger court next referred to The Oxford English Dictionary which includes “to make temporary use of (something not one’s own) ...” as one of the definitions of “borrow.” The court found this definition to be the one best suited to the insurance policy at issue because the purpose of the policy is to provide indemni *1082 fication for damages arising from the use of covered vehicles.
The Swearinger court also noted that “hire” and “borrow” are juxtaposed in the policy language. The court found that borrow can be distinguished from hire only by the absence of renumeration, and that a vehicle can be hired by one not physically exercising dominion or control, i.e., one hires a taxicab even though not taking physical control of it.
The Swearinger court adopted this interpretation of borrow and held that the school district had “borrowed” the host family’s car, since it properly gained the use of the vehicle for its purposes. Dominion and control or physical possession are not requisites to this interpretation of the term “borrow.”
In the instant case, Bradley Aucoin “volunteered” to get the ice after LSU’s employee, Ms. Ater, asked him who was supposed to go and get it. Ms. Ater provided him with directions to the ice house and money to buy the ice. She knew that Bradley was going to use a vehicle to get the ice.
We agree with the trial court that a vehicle can be “borrowed” by one not exercising physical control over the vehicle when it is being used in furtherance of the borrower’s interests and the borrower purposefully derives a benefit from the use of the vehicle. Since the term “borrow” is not defined in the policy,[18] the trial court was correct to afford this broad meaning to the word in order to effectuate coverage.
DID ERIC SCHROEDER HAVE LSU’S PERMISSION TO DRIVE BRADLEY AUCOIN TO THE ICE HOUSE?
Whether or not a particular person was operating an automobile with the express or implied permission of the named insured is to be determined according to the circumstances of the particular case. Malmay v. Sizemore, 493 So.2d 620 (La.1986); American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969). In the instant case, LSU’s representative, Ms. Ater, did not know that Eric was going with Bradley to get the ice. She did know that Bradley had to use an automobile, but didn’t inquire as to whose he would use. Therefore, Ms. Ater, and thus LSU, impliedly approved of, or granted implied permission to Bradley to use an automobile to get the ice. The crucial question then becomes, did LSU also impliedly consent to Bradley recruiting Eric to drive him to the ice house?
A second permittee such as Eric Schroeder generally is said to have the implied permission of the named insured only where it is reasonably foreseeable from the named insured’s point of view that the first permittee, here Bradley Au-coin, would allow someone else to drive. Czarniecki, 230 So.2d at 257; Southern v. State Farm Mutual Automobile Insurance Company, 496 So.2d 1349, 1351-52 (La.App. 3rd Cir.1986). Thus, implied permission arises from a course of conduct by the named insured which indicates an acquiescence in, or lack of objection to, the use of the vehicle by the second permittee. Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986).
In the instant case, Ms. Ater was looking for a student to go get ice. She was not primarily concerned about sending or not sending a particular student. She candidly admitted that she would not have had any *1083 objection to Eric going to get the ice, but that she just ran into Bradley first. Under these circumstances, we cannot say that Eric did not have the named insured’s implied permission to drive Bradley to get the ice.
This conclusion is bolstered by the fact that where a second permittee is seeking to invoke the coverage afforded by the omnibus clause in the named insured’s policy based on the implied permission of the named insured, and absent an express denial of permission, recovery is generally allowed where the original permittee is riding in the car with the second permittee at the time of the accident, or where the second permittee is serving the purpose of the first permittee in his use of the vehicle. Jones v. Breaux, 289 So.2d 110 (La.1974)[19]; Anderson v. Adams, 148 So.2d 347 (La.App. 1st Cir.1962). Even where the second permittee is using the vehicle contrary to the express wishes of the named insured, he is said to be using it with “permission” where the use of the vehicle serves some purpose of the named insured, or he derives an advantage or benefit from such use. Anderson, 148 So.2d at 352.
In the instant case, the first permittee (Bradley Aucoin) was in the vehicle with the second permittee (Eric Schroeder), and the purpose of both the named insured and the first permittee was being served at the time of the accident. Therefore, we are of the opinion that Eric Schroeder was driving his father’s car on the mission to get the ice with the implied permission of LSU, and the trial court was correct for so holding.
CONCLUSION
Since, under the facts most favorable to the appellants, the trial court was correct in holding that LSU borrowed the Schroeder vehicle and that Eric Schroeder had implied permission to drive it, the factual dispute as to whether or not Ms. Ater knew that Eric Schroeder was going with Bradley Aucoin to get the ice is not a material one. Appellants’ claim that the “Sadie Hawkins Day” event was not a school sponsored event and that LSU did not benefit from having students go get the ice is without substance and not a genuine issue. Summary judgment was properly granted in favor of appellees.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. Both Ms. Lee, and Eric Schroeder, the drivers of the vehicles involved in the accident, were minors at the time the accident occurred.

. Following our disposition as to the amount owed to the Lees, a dispute arose as to the ranking of Safeco’s and CNA’s UM policies. The Lees filed a rule to show cause in the trial court to determine the ranking of the policies. The trial court’s ruling was reversed and modified by this court on supervisory writs, following which certiorari was granted by the Louisiana Supreme Court. The supreme court reinstated the trial court's ruling that Safeco is liable to the Lees for $500,000.00 plus interest, and that CNA is liable for the remaining $906,000.00 plus interest. Lee v. USAA Casualty Insurance Company of America, 571 So.2d 127 (La.1990).

. Inasmuch as the Schroeders, Safeco, and CNA filed actions for declaratory judgment subsequent to a judgment on the merits, their motion for summary judgment was proper because it would grant all the relief requested.

. University Laboratory School is a part of the LSU system. It comprises a department in the College of Education at Louisiana State University on the Baton Rouge campus. The principal of University Laboratory School is the equivalent of a department chair in the College of Education, and all of the teachers there are LSU employees. Grades K through 12 are taught at the school. The part of the school comprised of grades 9 through 12 is commonly referred to as University High, or U. High.

. Ms. Ater found out from the school secretary sometime during the prior week where the ice could be purchased.

. "You" and "your” in this section refers to the named insured, LSU.

. Appellants contend that obtaining the ice ben-efitted only the senior class at U. High and not LSU.

. Appellants initially admitted that the Sadie Hawkins Day events were school sponsored and that obtaining the ice benefitted LSU. These admissions were withdrawn by amended answers to the interrogatories and requests for admission. At the hearing on the cross motions for summary judgment counsel for appellees agreed to waive his objection to the amended answers for the purpose of deciding the motions.

. Ms. Ater is a teacher at U. High and was a senior class sponsor whose responsibility it was to supervise the Sadie Hawkins Day events, Mr. Fox is the principal of U. High, and Mr. Smith is the Dean of the college of education at LSU. All are employees of LSU.

. Strictly speaking, whether or not obtaining the ice benefitted LSU is not a factual determination, but a conclusion which must be drawn from the circumstances and events surrounding the procurement of the ice. A dispute over such a conclusion will not preclude summary judgment. Bouterie v. Kleinpeter, 289 So.2d 163 (La.App. 1st Cir.1973), writ refused, 293 So.2d 169 (La.1974). It is clear even from the appellant’s version of the circumstances and events surrounding the procurement of the ice that LSU did benefit from sending students to get the ice. This can be seen from the fact that Ms. Ater had to go and get the ice when the students did not return with it.

. Ms. Ater's deposition testimony is accurately reflected in the part of this opinion under the heading “facts” above.

. We are convinced from the transcript of the hearing on the cross motions for summary judgment and the trial court’s oral reasons for judgment that the trial court was very concerned *1080 about whether there were any facts in dispute and that he granted the summary judgment in favor of appellees based on the facts as asserted by the appellants.

. See, Sizeler Property Investors, Inc. v. Gordon Jewelry Corporation, 550 So.2d 237, 242 (La.App. 4th Cir.), writ denied, 551 So.2d 1327 (La.1989); and Whitney National Bank v. Palermo, 505 So.2d 95, 97 (La.App. 4th Cir.1987).

. Appellants also cite Imburgia v. Salem Township Rescue Squad, Inc., 114 Wis.2d 159, 337 N.W.2d 467 (App.) review denied, 114 Wis.2d 603, 340 N.W.2d 202 (1983); and Jure v. Home Indemnity Co., 301 N.W.2d 554 (Minn.1981). However after reviewing these decisions, we find that they interpret the word “hired” and offer little guidance on the meaning of "borrow."

. In Sturgeon, decided under Louisiana law, the fifth circuit relied on the Texas Supreme Court’s decision in Liberty Mutual after the Louisiana Supreme Court denied certification of the question of what the term "borrow” meant in an insurance policy.

. In 215 Cal.Rptr. 854, 701 P.2d 1172 (1985) the California Supreme Court granted writs in Swearinger. However, the case was dismissed on motion of the parties prior to that court’s ruling.

. The policy language in the policy at issue in Swearinger is identical to the policy language before us in this case.

. We point out that it would be relatively simple to include a definition of the word “borrow” in the policies at issue which would require physical possession by the named insured before a vehicle is considered "borrowed." We further note that the insurance industry is well aware of the possible expansive interpretation of the word "borrow" by the courts. In a Fire, Casualty & Surety Bulletin, (an insurance industry publication), appended to one of appellees’ memoranda in the court below, and listed as exhibit 1 to this appeal, the discussion dealing with "persons insured” under the policy here at issue contains the following warning concerning the exception of "borrowers" of a covered auto from the loading/unloading exclusion of the policy (D.2.c above): “[t]he problem in interpreting this provision is that the policy does not clearly define what is meant by a ‘borrower’ of the covered auto. Consequently, courts may be inclined to interpret the term ‘borrower,’ and therefore the entire provision, broadly in the insured’s favor.”

. We only cite Jones for its discussion of implied permission. Jones also held that a provision in a rental car agreement which attempted to limit the applicability of the omnibus clause in the lessor’s insurance policy by restricting insurance coverage to only the named lessee was invalid as being a violation of La.R.S. 22:628. This statute provided at the time that an insurance policy could not be modified by any agreement not made a part thereof. The Jones court then went on to hold that there was coverage under the lessor’s policy because the driver of the leased vehicle had the permission of the lessee to drive the vehicle. It is for this discussion of permission which we cite Jones.
In Hearty v. Harris, 574 So.2d 1234 (La.1991), the Louisiana Supreme Court questioned the continuing validity of Jones’ treatment of the modification of the omnibus clause due to the amendment of La.R.S. 22:628 which allowed insurance policies to incorporate the terms of another policy by reference. That is not an issue in the instant case.