609 So.2d 958 (1992)
Morgan R. MIX
v.
The UNIVERSITY OF NEW ORLEANS, et al.
No. 91-CA-2720.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 1992.
Writ Denied February 5, 1993.
*959 Rutledge C. Clement, Jr., Amelia Williams Koch, Phyllis R. Guin, Locke Purnell Rain Harrell, New Orleans, for defendants-appellees.
John H. Brooks, Gretna, for plaintiff-appellant.
Before BYRNES, CIACCIO and LANDRIEU, JJ.
BYRNES, Judge.
Plaintiff-appellant, Morgan Mix, was a non-classified employee serving as the assistant director of the physical plant at the University of New Orleans. The defendant-appellee is the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, hereinafter referred to as "University", which manages and controls the University of New Orleans where defendant worked. Mix was employed by the University from September 6, 1977 until July 19, 1989, when he was terminated involuntarily.
Mix disputes the reasons given for his termination. More significantly, he claims that his discharge was invalid because the University was bound by the procedures set forth in its "Grievance Procedure For Unclassified Personnel" which it failed to follow when it discharged him. Plaintiff filed suit, in effect, for wrongful discharge, and the consequent mental anguish, loss of wages, and loss of fringe benefits.
The trial court dismissed the University's exception of no cause of action, but subsequently ruled without written reasons in favor of the University on motion for summary judgment. It is from that judgment that Mix now appeals. We affirm.
Mix does not contend that the University agreed to employ him for a fixed term. Mix does not contend that the Grievance Procedure was an employment contract itself. Mix does not contend that the University ever represented to him that the Grievance Procedure was part of his employment agreement. He does not contend that there was ever any agreement to do so. He does not contend that he, or a group of employees of which he was a part, *960 negotiated or bargained for the terms of the Grievance Procedure. He does not contend that the provisions of the Grievance Procedure were arrived at mutually. He does not contend that the right to avail himself of the protections afforded by the Grievance Procedure were in any way an inducement to him to accept or continue employment by the University. He does not contend that he would have himself terminated University employment had he known that he would not be afforded the benefits of the University Grievance Procedure.
Basically, Mix only disputes two questions of fact:
(1) Were the reasons given for his termination accurate, fair or reasonable?
(2) Did the University properly follow the provisions of its "Grievance Procedure for Unclassified Personnel" when it terminated him?
In effect, Mix claims that these contentions raise genuine issues of material fact that the trial court could not properly dispose of on a motion for summary judgment. We disagree.

I. SUMMARY JUDGMENT
A motion for summary judgment may be granted if the pleading, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Urbeso v. Bryan, 583 So.2d 114, 116 (La.App. 4 Cir.1991); Woods v. ABC Ins. Co., 580 So.2d 480, 481 (La. App. 4 Cir.1991). The burden of showing that there is no genuine issue of material facts and that the mover is entitled to judgment as a matter of law is upon the mover, and all doubt must be resolved against the mover and in favor of a trial on the merits. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Woods v. ABC Ins. Co., 580 So.2d at 481.
A fact is material if it is essential to plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Schroeder v. Board of Sup'rs of Louisiana State University, 577 So.2d 1074, 1078 (La.App. 1 Cir.), reversed on other grounds, 591 So.2d 342 (La.1991); Eads Operating Co., Inc. v. Thompson, 537 So.2d 1187, 1194 (La.App. 1st Cir.1988), writ denied, 538 So.2d 614 (La.1989). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in the light of the substantive law applicable to the case. Schroeder v. Board of Sup'rs of Louisiana State University, 577 So.2d at 1079; Sun Belt Constructors, Division of a Div. MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5 Cir.1988).
To determine what is "the substantive law applicable to the case" in a manner commensurate with the extremely demanding standards requisite to dismissing a claim on motion for summary judgment, a thorough survey and analysis of relevant legal authority is justified.

II. THE UNIVERSITY GRIEVANCE PROCEDURES ARE NOT "RULES" AS DEFINED BY THE ADMINISTRATIVE PROCEDURE ACT, LSA-R.S. 49:950, ET SEQ.
Mix argues that the University as a state entity was bound by the provisions of its Grievance Procedure because it was a "rule" as defined by the Administrative Procedures Act:
"`Rule' means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency...." (Emphasis added). LSA-R.S. 49:951(6)
We find that the University Grievance Procedure relates only to the regulation of internal management. We hold that it is not a binding rule subject to the formalities of the Administrative Procedures Act.

III. THE UNIVERSITY GRIEVANCE PROCEDURES WERE NOT PART OF MIX'S CONTRACT OF EMPLOYMENT
Louisiana recognizes the doctrine of employment at will. Both the employer *961 and the employee are free to terminate the relationship at any time without cause. Pitcher v. United Oil and Gas Syndicate, 174 La. 66, 139 So. 760 (1932) explains the philosophical basis of this doctrine:
An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend. And if the contract of employment be not binding on the employee for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of "mutuality."
The lack of "mutuality" referred to Pitcher, supra, that characterizes the University Grievance Procedure was best described in a similar situation where a court used language which we adopt as our own for purposes of the instant case:
It was only a unilateral expression of company policy and procedures. Its terms were not bargained for by the parties and any benefits conferred by it were mere gratuities. Certainly, no meeting of the minds was evidenced by the defendant's unilateral act of publishing company policy. State v. Motor, 220 Kan. 99, 551 P.2d 783 (1976).
Gilbert v. Tulane University, 909 F.2d 124, 126 (5 Cir.1990), provides an excellent synopsis of the legal basis for the doctrine:[1]
Under Louisiana law, a person employed for an indefinite period is an employee at will. Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1103-04 (La.1988); see LA.CIV.CODE ANN. art. 1778 (West 1987). An at-will employee is free to quit at any time without liability to his or her employer and may be terminated at any time, provided the termination does not violate any statutory or constitutional provision. LA.CIV.CODE ANN. art. 2747 (West.1952); Johnson v. Delchamps, 897 F.2d 808, 810 (5th Cir.1990).
Mix was an unclassified employee not protected by Civil Service. He does not allege that his employment was for a definite time. "As plaintiff was not protected by Civil Service.... and as that employment was not for a fixed term, his employment could be terminated ... at any time or without cause." Laque v. St. Charles Parish Police Jury, 363 So.2d 1240, 1241 (La.App. 4 Cir.1978). Mix can cite no authority to support his contention that the doctrine of "employment at will" which is the rule in Louisiana does not apply to his employment by the defendant University. In fact the creation of Civil Service was in recognition of the doctrine of "employment at will" as the law of Louisiana. In the absence of such a doctrine there would have been no need to create a Civil Service exception to it. Mix was free to quit without notice at any minute on any day, even if he were in the middle of an important task; and he would owe no obligation to train his successor or to help locate files or tools or explain how things worked.
Therefore, he can only recover if he can show that the Grievance Procedure was part of his employment agreement with the University thereby creating a contractual exception to the employment at will doctrine. A survey of employment cases shows this is not the case.
Gilbert v. Tulane University, 909 F.2d 124 (5 Cir.1990) and Wall v. Tulane University, 499 So.2d 375 (La.App. 4 Cir., 1986), writ denied, 500 So.2d 427 (La.1987), *962 are both strikingly similar to the instant case.
In Wall v. Tulane University, 499 So.2d 375, 375-376 (La.App. 4 Cir.1986), writ denied, 500 So.2d 427 (La.1987) this court held that the Tulane Staff Handbook was not a contract of employment. The court determined that the handbook was "primarily informational in nature and did not ... constitute a binding promise by Tulane to continue indefinitely the benefits described therein." The court also noted that no promises had been made to Wall concerning the benefits that would have made them "part of Wall's employment agreement with Tulane." The plaintiff assumed that he could rely on the Staff Handbook, but the court sustained the summary judgment stating that "... this subjective expectation is not sufficient to raise a genuine issue of material fact."
In Gilbert, the court in dealing with the same handbook that was at issue in the Wall case, explained that the plaintiff "... argues that Tulane's staff handbook modified his at-will employment status and gave him a contractual right to invoke its grievance procedures.... He argues that the Louisiana courts have found Staff Handbooks to create contractual rights in other cases. We reject these contentions..... [N]o promises had been made to Wall concerning the benefits that would have made them `part of Wall's employment agreement with Tulane.' ... [N]o oral contract was offered to Gilbert and ... no promises were made to him concerning the handbook's grievance procedures.... Since the handbook itself was not an employment contract, and no promises were made to Gilbert concerning its benefits, Gilbert had no contractual right to invoke the handbook's grievance procedures." (Emphasis added). 909 F.2d at 126, 127.
In Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2 Cir.1982), plaintiff's petition was dismissed on an exception of no cause of action. Therefore, the court accepted all of plaintiff's well-pleaded allegations as true:
Plaintiff began working for defendant as a nurse's aid in October 1979. On May 6, 1980 plaintiff was discharged on the grounds that she failed to turn the patients as required by policy of the nursing home and refused and failed to change the residents as often as required by the nursing home. Plaintiff is not guilty of the acts for which she was fired. Defendant's personnel policy requires that three warnings be given an employee prior to his discharge and that these warnings be acknowledged by the employee in writing; plaintiff never received any warnings prior to her discharge. (Emphasis added)
* * * * * *
Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge.
* * * * * *
Plaintiff did not allege that she was employed for a specific period of time. Plaintiff's allegation that the defendant failed to comply with its own personnel policy requiring three warnings to an employee prior to discharge does not amount to an allegation that defendant was contractually obligated to her as part of an employment to give the warnings prior to discharge. (Emphasis added)
In Morgan v. Avondale Shipyards, 376 So.2d 516 (La.App. 4 Cir.1979), the plaintiff alleged that the "Employees Guide" constituted an employment contract. Therefore, Avondale's failure to follow the requirements of the Guide when it terminated his employment constituted wrongful discharge. The Court found that even if the Guide were determined to constitute a contract between Avondale and its employee Morgan, that Avondale had properly complied with the requirements of the Guide. The court did not find that the Guide was a contract. Moreover, the court specifically reiterated "... the accepted legal proposition that an employment for an indefinite term is terminable at *963 will by either employer or employee." 376 So.2d at 517. The court suggested that the right to terminate at will and without notice could be altered by contract: "Thus if a contract provided that the employment was terminable without cause only upon two weeks' notice, a court would presumably enforce such a provision." (Emphasis added). 376 So.2d at 517. We agree that employment at will may be altered by contract, but not by internal policies, procedures, and manuals.
In Thibodeaux v. Southwest Louisiana Hosp. Ass'n., 488 So.2d 743 (La.App. 3 Cir. 1986), plaintiffs contended that "... the defendants' employee's personnel manual constituted an implied exception to `at will' employment, and by virtue of the comprehensive provisions of the manual, the hospital implies to the employee that he is not `at will', but can only be discharged for cause." The court did not find it necessary to determine whether the manual was tantamount to a contract because even if it were, it contained an employment at will clause:
"Employment at a Lake Charles Memorial Hospital is a mutual arrangement and may be terminated by either you or the hospital...."
In Aldahir v. Mobil Exploration & Producing Southeast, Inc., 420 So.2d 714 (La. App. 4 Cir.1982) writ denied, 423 So.2d 1147 (La.1982), plaintiff received a notice dated June 19, 1980 advising him of problems in his job performance. The notice also established goals for improvement to be achieved by October 15, 1980. Plaintiff's success in achieving those goals was to be evaluated by November 1, 1990 at which time the notice stated that he would have to terminate employment within 30 days if he were deemed unsuccessful. The court found that this notice did not constitute a promise of employment through November 1, 1980. The court characterized it as a warning and not an agreement. It did not constitute an abandonment by defendant of its prerogatives as plaintiff's employer with respect to defendant's overall performance and it did not purport to guarantee plaintiff a position.
In Jackson v. East Baton Rouge Parish School Bd., 393 So.2d 243 (La.App. 1 Cir. 1980), neither the parties nor the court ever raised the issue of the existence of an express or implied contract or agreement with the employee. The court did note that the employee had:
... appealed his discharge to the Director of Maintenance as provided in the grievance procedure of the School Board. After a hearing on the matter the Director recommended appellant be reinstated with full seniority; the Director made no provision for back wages.
* * * * * *
... Because of La.Civ. Code art. 2747 and the applicable jurisprudence, there is no cause of action for a wrongful discharge nor for a claim of back wages unless the petition clearly states that the plaintiff was hired for a fixed period of time and was then discharged without just cause. Appellant's petition simply alleges that he was "unjustly fired." This statement is a mere conclusion ..."

In Bramblett v. Wilson, 413 So.2d 600, 602 (La.App. 1 Cir.1982), the court stated: "There is no evidence in the record of any agreement on the part of plaintiffs to remain in the employment of the Red Bramblett Co., Inc. for any period of time." Moreover, it appears that the real issue was more one of the employer complaining that the employees walked out on him rather than the employees complaining that they were fired in contravention of some policy or agreement. Thus, this case is really an example of the concept of mutual freedom of employees as well as employers to terminate at will embodied in the employment at will doctrine. See Pitcher v. United Oil and Gas Syndicate, supra.
In Williams v. Touro Infirmary, 578 So.2d 1006, 1009 (La.App. 4 Cir.1991), plaintiffs made the obviously specious argument that their participation in their employer's retirement plan established a fixed term of employment to age 65.
In Varnado v. Roadway Exp., 557 So.2d 413 (La.App. 4 Cir.1990), the court found that the relationship of the employee to his *964 employer was governed by the collective bargaining agreement that existed between the employer and the Teamsters Union, plaintiff's bargaining representative, which specifically provided guidelines for the termination of employees covered by the agreement. A collective bargaining agreement is obviously not a unilateral employee manual or grievance procedure. It is a valid, contractual exception to the employment at will doctrine.
In Roberts v. Louisiana Bank & Trust Co., 550 So.2d 809 (La.App. 2 Cir.) writ denied, 552 So.2d 398 (1989), plaintiff never argued the existence of anything purporting to be an employment contract, policy manual, agreement, handbook, procedures manual; nor did she argue that her employer had made any equivalent oral promises or representations. The employee merely argued that she shouldn't have been discharged for refusing to take a second polygraph test. "Unfairness" or "unreasonableness" are not recognized exceptions to the employment at will doctrine.
In Griffith v. Sollay Foundation Drilling Inc., 373 So.2d 979 (La.App. 3 Cir. 1979), the plaintiff contended that he had an oral commitment for "long term" or "permanent" employment. The court held that a contract calling for "permanent" employment, for life employment, or other terms purporting permanent employment, amounts to employment of an indefinite duration, terminable at the will of either party.
In Simmons v. Westinghouse Electric Corporation, 311 So.2d 28, 30 (La.App. 2 Cir.1975) plaintiff argued that "... he was led to believe that he could work there as long as he desired unless he violated rules or performed unsatisfactorily; that he thus believed he had a permanent contract of employment, terminable by him at will, but, by Westinghouse, only for a `good cause.'"
There were no personnel manuals or "grievance procedures" mentioned in the opinion. "[T]here was simply an oral contract of employment for an indefinite term as defined by our law, and such a contract is terminable at will by either party with or without cause." Simmons, supra, 311 So.2d at 30.
From the foregoing survey we draw the following conclusions:
(1) There are no Louisiana cases holding that employee manuals, policies, or grievances procedures confer any contractual rights upon employees or create any exceptions to the "employment at will" doctrine.
(2) Several Louisiana cases have held that employee manuals as well as company policies and procedures do not confer contractual rights upon employees nor create any exceptions to the "employment at will" doctrine. Wall v. Tulane University, 499 So.2d 375 (La.App. 4 Cir.1986); Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2 Cir.1982); Aldahir v. Mobil Exploration & Producing Southeast, Inc., 420 So.2d 714 (La.App. 4 Cir.1982); Gilbert v. Tulane University, 909 F.2d 124 (5 Cir.1990). Those cases are virtually identical to this case and correctly express Louisiana law on this issue. Therefore, we hold that the University Grievance Procedure created no contractual rights in favor of Mix. Consequently a determination of whether those procedures were properly followed is irrelevant and raises no genuine issue of material fact.
(3) The employee's "expectation" that the University would adhere to the provisions of the Grievance Procedure does not give him any legal rights. Wall v. Tulane University, 499 So.2d 375 (La.App. 4 Cir.1986).
(4) The reasons for termination need not be accurate, fair or reasonable. Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2 Cir.1982). There need be no reason at all for termination. Simmons v. Westinghouse Electric Corporation, 311 So.2d 28 (La.App. 2 Cir.1975). The question of why Mix was terminated is irrelevant and consequently raises no genuine issue of material fact.
Therefore, as a matter of law we find that plaintiff has failed to raise any genuine *965 issues of material fact. The judgment of the trial court was correct.
AFFIRMED.
NOTES
[1] The University cited several excellent, well reasoned cases from around the country involving remarkably similar facts. In each of those cases the court held that policies, procedures, manuals, etc. were not employment contracts and did not alter or provide exceptions to the employment at will doctrine. We did not discuss them as authority in the body of this opinion as the Louisiana employment at will doctrine has its basis in the Civil Code and not the common law. We feel that the existence of such cases is worth mentioning, however, if only to refute the contention that Louisiana policy is somehow aberrational or anachronistic. See: Reynolds Mfg. Co. v. Mendoza, 644 S.W.2d 536 (Tex.App.1982); Johnson v. National Beef Packing Co., 220 Kan. 52, 551 P.2d 779 (1976); Williams v. Biscuitville, Inc., 40 N.C.App. 405, 253 S.E.2d 18 (1979).