DANIEL L. DYSART, Judge.
1 iThis is an appeal of a summary judgment granted in favor of defendants-appellants, Leonce “Lee” Hampton, Amistad Research Center and Lance Query. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On July 10, 2009, plaintiff, Brenda B. Square, filed a Petition for Damages against her supervisor, Leonce Hampton, and Amistad Research Center (“ARC”), a non-profit business entity which employed plaintiff since 1994.[1] Plaintiff became the Director of Archives and Library at ARC in 1998.
According to the Petition, plaintiff was the designated Project Director of an IMLS grant which gave her “immediate responsibility for all program activities and the proper and legal expenditures of those funds.” Plaintiff alleges that Mr. Hampton refused to allow her to oversee and manage the program, although she received periodic financial reports from an independent accountant. Plaintiff raised issues concerning the “questionable use” of the IMLS funds to ARC’s Board |2of Directors by letter date January 8, 2008.[2] ARC’s executive committee met in April, 2008, and by letter dated June 6, 2008 from ARC’s President and Chairman of the Board, ARC informed plaintiff that it found “no evidence to substantiate the charges” she raised concerning Mr. Hampton’s management of the IMLS funds. It further advised that plaintiff should have initially addressed her concerns with Mr. Hampton as provided by ARC’s “Personnel Policies.”
*91 On October 3, 2008, plaintiff filed a formal grievance with Mr. Hampton, who replied on October 10, 2009, indicating that he would not review the grievance due to its “untimeliness.”[3] She then appealed to ARC’s Personnel Committee, but received no response.
Plaintiff maintains that, after she raised her concerns, she was subjected to retaliation, citing the following examples: (1) her removal from the position of Director of Library (she was provided with the new job description of Director of Archives); (2) her removal from the position of manager of the Tom Dent Processing Project; (3) the denial of staff assistance (relying solely on volunteers) to address a “backlog of collections acquired in the aftermath of Hurricane Katrina” and at which time ARC’s staff was reduced from 12 to 3 employees; (4) increased harassment and disrespect from Mr. Hampton and other colleagues; [4](5) her being given “minimal input in the United Church Board for Homeland | sMinistries Grant project, which she initiated;” and (6) ARC’s denial of a formal role for her in ARC’s “recently funded civil rights preservation projects.”
The Petition alleges violations of ARC’s policies in addition to federal and state laws designed to protect an employee who exposes her employer’s “improper and unlawful acts” from retaliation. The Petition seeks damages under Louisiana’s “whistle-blower” statute and damages in the form of mental anguish and emotional distress.
In response to the Petition, ARC and Mr. Hampton filed a Motion to Dismiss based on several grounds, including the Petition’s failure to state a cause of action, the court’s lack of subject matter jurisdiction and the Petition’s untimeliness.
On November 5, 2009, plaintiff filed a First Supplemental and Amending Petition for Damages (“First Amended Petition”), which removed all claims under the federal or state whistleblower laws, and added claims under tort law (specifically, La.C.C. art. 2315) and constitutional claims concerning the alleged violation of plaintiffs “due process and property rights.” With respect to the latter claim, plaintiff added the following allegations-that defendants subjected her to a hostile working environment which caused severe mental anguish and distress; that after she questioned Mr. Hampton’s misuse of grant funds, he “routinely humiliated and embarrassed” her before her peers and “outside professionals;” that Mr. Hampton denied her the opportunity to manage various projects; that Mr. Hampton intentionally delayed a “major grant funded in January 2008,” causing plaintiff to be untimely in submitting reports (which reflected negatively on her in her capacity as the Project Director); that ARC’s Executive Director changed her Lparking permit from a “faculty” permit to a “staff’ permit; that Mr. Hampton “conspired with colleagues” to change procedures without discussing same with her and failing to timely provide notice to her of those changes; that in the “Spring and Summer semesters of 2009,” she was removed as supervisor of interns from Southern University at New Orleans and Xavier University; and that she was not allowed to complete the “grant-funded Ninth Ward Oral History project.”
*92 ARC and Mr. Hampton then filed another Motion to Dismiss based on the failure of the Petition, as amended, to state a cause of action.
By way of a Second Amending and Supplemental Petition (“Second Amended Petition”) filed on March 3, 2011, plaintiff added claims that occurred since the filing of her amended Petition. She alleges that, after she had a subpoena duces tecum served on Mr. Hampton for financial records pertaining to ARC’S grants, she experienced increased hostility and negative treatment from Mr. Hampton and occasionally from her co-workers, including his having issued a written “admonition” to her for her alleged failure to help with “moving activities” related to the move of ARC’S art collection from the New Orleans Museum of Art. Additionally, she was suspended on October 12, 2011.[5]
The Second Amended Petition also alleges other incidents — a November 9, 2010 copy of minutes from a staff planning meeting that included “incorrect statements and distortions of plaintiffs position on a number of issues;” a November 17, 2010 report submitted to Mr. Hampton for ARC’S board meeting [ ¡which he revised “thereby distorting and minimizing [p]lain-tiffs contributions;” in early December, 2010, plaintiff was given tasks to be completed by January 3, 2011, with no eonsid-eration for holiday leave and pre-approved personal leave.[6]
The Second Amended Petition then states that, on January 3, 2011, plaintiff was informed at 4:25 p.m. that certain reports given to her in December were due by 4:00 p.m., although she had never previously been made aware of that deadline (plaintiff maintains she submitted the reports prior to leaving work that day). The following day, January 4, 2011, plaintiff was given a letter of termination (the day before her deposition was scheduled to take place in connection with this litigation).[7]
Plaintiff asserts that her termination was “retaliatory, arbitrary, and capricious” and a violation of her substantive due process. She likewise maintains that her termination was “procedurally flawed.” The Second Amended Petition sought an injunction denying her termination pending a trial on her claim for damages, in addition to back pay and all benefits.
A hearing was held on the injunction on March 14, 2011, and the trial court denied plaintiffs request for injunctive relief. Plaintiff filed a Motion to Appeal the denial of injunctive relief on April 6, 2011.
On January 4, 2012, plaintiff again amended her Petition to name the Administrators of the Tulane Educational Fund (“Tulane University”) and Lance 16 Query *93 as additional defendants.[8] Tulane University was added as Mr. Query’s employer and as the “second employer” of Mr. Hampton. Plaintiff claims that Tulane University allowed Mr. Query and Mr. Hampton to terminate plaintiffs employment after she complained about the alleged misuse of grant funds through her “whistleblower lawsuit.” Plaintiff maintains that Tulane University “clearly” has control over ARC, giving ARC’s listing as a Tulane University library on its website as an example. Plaintiff also maintains that Mr. Query, in his various roles with ARC, functioned as Mr. Hampton’s supervisor.[9]
According to plaintiff, Mr. Query was involved in a June 3, 2010 evaluation of her and her ultimate termination (in that he stood with Tulane University’s security officers as plaintiff was ordered to leave her job by Mr. Hampton). Plaintiff also added the allegations that she has sought medical assistance for her “severe emotional distress and mental anguish” and that she has suffered “increased blood pressure, headaches, [and] sleeplessness.”[10]
Defendants, ARC and Mr. Hampton, filed a Motion for Summary Judgment on October 21, 2011, which was reiterated (and supplemented) in a second Motion for Summary Judgment filed on June 21, 2012.[11] A hearing was held on the Motions on September 28, 2012, and by judgment dated October 2, 2012, the trial court denied summary judgment on plaintiffs claims for intentional infliction of 17emotional distress but granted summary judgment and dismissed with prejudice (as to all defendants)[12] all of plaintiffs remaining claims.
Plaintiff appealed the October 2, 2012 judgment on October 26, 2012. In addition, the ARC defendants filed an application for a supervisory writ in this Court regarding the trial court’s failure to grant summary judgment as to plaintiffs claims for intentional infliction of emotional distress. This Court denied the writ application. See Square v. Hampton, et al, 12-1545, unpub., (La.App. 4 Cir. 12/21/12). The ARC defendants then sought review with the Supreme Court which, on March 8, 2018, granted the writ application, reversing the trial court’s judgment and granting summary judgment on the basis that “[pjlaintiff has failed to produce factual support for her claim of intentional infliction of emotional distress. See White v. Monsanto Co., 585 So.2d 1205 (La.1991).” Square v. Hampton, 13-0167 (La.3/8/13), 109 So.3d 351.
Because plaintiff did not timely pay the costs for the appeal of the October 2, 2012 appeal (nor the costs for the March 21, 2011 appeal), the ARC defendants filed a Motion to Dismiss both appeals on May 17, *94 2013. Plaintiff then filed “Plaintiffs Motion to Dismiss Appeal, Without Prejudice, and Motion for An Expedited Hearing” on July 31, 2012. The basis of plaintiffs Motion to Dismiss is that “[njeither the March 21, 2011 nor the October 2, 2012 Judgments in question dismissed all of [her] claims against the Amistad Defendants, and are not appealable absent a designation as a final judgment by the District Court.” |sPlaintiff sought a dismissal of her appeal, with the intent to file a new motion for appeal once a final judgment was entered. Plaintiff also maintained that she was not untimely with respect to the appeal costs insofar as the delay for paying those costs begins to run only “upon the signing of a ‘final judgment.’ ”
Both motions to dismiss plaintiffs appeals were heard by the trial court on August 7, 2013. By judgment dated August 7, 2013, the trial court rendered judgment based on the parties’ stipulation that plaintiffs appeals should be dismissed as abandoned “for non-payment of the estimated costs of appeal,” thereby granting the ARC defendants’ Motion to Dismiss Appeals. The trial court then granted a final judgment on the ARC defendants’ Motion for Summary Judgment, dismissing with prejudice:
This case and all of plaintiffs claims therein, including, without limitation, those for injunctive relief and for damages for alleged intentional infliction of emotional distress, wrongful termination, breach of contract, failure to comply with employee policies, deprivation of constitutional rights, violation of La. R.S. 42:1169, violation of Louisiana’s Employment Discrimination Law (La. R.S. 23:301, et seq.), and violation of Louisiana’s Whistleblower Statute (La. R.S. 23:967)....
Plaintiff timely filed the current appeal.
DISCUSSION
Plaintiff raises several assignments of error. At the outset, however, we address two preliminary matters. First, plaintiff assigns as error the trial court’s denial of her request for injunctive relief. That issue is not properly before the Court given plaintiffs failure to timely perfect an appeal of that issue.
Under La. C.C.P. art. 3612 B, “[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction.” As this laCourt recognized, “[although a preliminary injunction is a procedural device, interlocutory in nature, La. C.C.P. art. 3612 does not restrict the right of appeal to only judgments that grant injunctive relief [and] a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal.” Sessions, Fishman & Nathan, L.L.P. v. Salas, 04-1790, p. 6 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377-8, citing Fabacher v. Hammond Dairy Co., Inc., 389 So.2d 87, 89 (La.App. 4th Cir.1980).
An appeal of “an order or judgment relating to a preliminary injunction must be taken,” however, “within fifteen days from the date of the order or judgment.” La. C.C.P. art. 3612 C (emphasis added). See also Yokum v. Nicholas S. Kamo, Inc., 10-0357, p. 1 (LaApp. 4 Cir. 8/26/10), 47 So.3d 1014, 1015 (“La. C.C.P. art. 3612 grants only a fifteen-day period to appeal an order granting or denying a preliminary writ of injunction.”) Here, the judgment denying plaintiff injunctive relief was rendered on March 21, 2011. Plaintiffs Motion for Devolutive Appeal, filed on April 6, 2011, thus was untimely. The last day on which a timely Motion for Appeal could have been filed was April 5, 2011. According to La. C.C.P. art. 5059, legal holidays are included in “the computation *95 of a period of time allowed or prescribed ... except when ... (3) the period is less than seven days.” Here, plaintiffs Motion for Appeal was filed sixteen days after the judgment denying injunctive relief and therefore, was not timely.[13]
|10As a second preliminary matter, plaintiff purportedly assigns no error to the trial court’s October 2, 2012 ruling which denied the ARC defendants’ motion for summary judgment as to her claim for intentional infliction of emotional distress. However, she nevertheless proceeds to argue that “[t]he evidence in this case is sufficient to reach the Louisiana Supreme Court’s high threshold for intentional infliction of emotional distress,” citing a number of supporting cases. She then outlines the facts set forth in her affidavit that she believes give rise to her claim that “the ‘unsatisfactory job performance’ argument is a mere pretext for the retaliatory conduct directed toward [plaintiff] over a 8-year period, intended to and in fact, inflicted extreme emotional distress.”
Plaintiffs claim for intentional infliction of emotional distress has been eliminated in its entirety by the Supreme Court’s grant of the ARC defendant’s writ application. Square, supra.[14] That decision is the law of the case and, accordingly, we do not address those claims again in this opinion. See, e.g., Duncan v. Bartholomew, 11-0855, p. 17 (La.App. 4 Cir. 3/14/12), 88 So.3d 698, 711 (“[u]nder the law-of-the case doctrine ... prior rulings on [plaintiffs] interlocutory writ ha[ve] conclusive effects on subsequent proceedings.”)
We now turn to plaintiffs remaining assignments of error, all of which arise out of the grant of the ARC defendants’ Motion for Summary Judgment. We Inreview the grant of a summary judgment de novo using the identical criteria that govern the trial court’s 'consideration of whether summary judgment is appropriate. Smitko v. Gulf South Shrimp, Inc., 11-2566, p. 7 (La.7/2/12), 94 So.3d 750, 755. See also Smith v. Treadaway, 13-0131, p. 3 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828. “A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B).” Jackson v. City of New Orleans, 2012-2742, p. 3 (La.1/28/14), 144 So.3d 876, 2014 WL 341020.
Plaintiffs arguments focus largely on her contention that ARC’s personnel policies afforded her “constitutionally protected” due process rights, which ARC violat *96 ed.[15] Plaintiff relies on ARC’S Personnel Policies, a copy of which was attached to her opposition to the Motion for Summary Judgment, in support of her position that “where the employer has officially provided a ‘due process’ right [in the form of an employment policy manual], a court can find a contractual right or implied contractual right.”[16] More particularly, plaintiff claims that the provisions set forth in paragraph XII, entitled “Termination,” and subpart B “provided guidelines and safeguards for the termination of its employees.” The provision on which she relies states as follows: hj>B. Involuntary Termination
1. Separation for non-exempt employees will take effect after two weeks notice or immediately upon the payment of equivalent salary in lieu of such written notice. For exempt staff, separation will take effect after one month’s notice or immediately upon payment of equivalent salary in lieu of written notice. No severance pay is given for either classification of employees.[17]
We note that subpart B, a provision plaintiff does not address, also provides that:
2. The procedure for involuntary termination is implemented according to Louisiana Civil Code Article 2747 which allows that all employees of the Amistad Research Center are considered “at will” employees. As such, the Amistad can terminate or change the employment relationship “at will”, unless there is a contractual agreement. In general, the Center can terminate an “at-will” employee, or change the employee’s position or compensation without notice. Likewise, all employees can termination their employment “at-will” without notice or reason.
Consistent with subpart B(2), Louisiana law has routinely recognized that, absent a contract of employment, or when employment is for an indefinite period of time, an employee is considered to have “at will” employment. See Jeansonne v. Schmolke, 09-1467, p. 11 (La.App. 4 Cir. 5/19/10), 40 So.3d 347, 358 (“[a]n ‘at will’ employee is one that was not hired for a fixed time period”); Bell v. Touro Infirmary, Inc., 00-0824, p. 4 (La.App. 4 Cir. 3/21/01), 785 So.2d 926, 929 (“a 11sperson employed for an indefinite period is an employee ‘at will’ ”), citing Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101, 1103-04 (La. 1988).
Our jurisprudence is well-settled that an “at will” employee “is subject to *97 dismissal by his employer at any time, for any reason, without the employer incurring liability for wrongful discharge.” Jeansonne, 09-1467, p. 11, 40 So.3d at 358, citing Saacks v. Mohawk Carpet Corp., 03-0386 (La.App. 4 Cir. 8/20/03), 855 So.2d 359. See also Wusthoff v. Bally’s Casino Lakeshore Resort, Inc., 97-1386 (La.App. 4 Cir. 2/25/98), 709 So.2d 913, 914 (“[a]n employer may dismiss an at will employee at any time for any reason”). Similarly, an “at will” employee may terminate her employment at any time and without exposing herself to liability to her employer. Bell v. Touro Infirmary, Inc., 00-0824, p. 4 (La. App. 4 Cir. 3/21/01), 785 So.2d 926, 928. See also Bains v. Young Men’s Christian Ass’n of Greater New Orleans, 06-1423, p. 9 (La.App. 4 Cir. 10/3/07), 969 So.2d 646, 652 (“in the at-will employment context, either the employer or employee may terminate at any time”)(internal citation omitted).
We recognize that there are exceptions to the general rule that an “at will” employee may be terminated for any reason and at any time. For example, an employee may have a cause of action where his or her termination violated a “statutory or constitutional provision.” Bell, 00-0824, p. 4, 785 So.2d at 928. In that regard, for example, under both federal and Louisiana law, employers are prohibited from taking adverse employment actions based upon certain “protected” characteristics, such as race, gender, age, national origin, or religion. Hare v. Paleo Data, Inc., 11-1034, p. 6 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 385. As the |14Louisiana Supreme Court noted in Quebedeaux v. Dow Chemical Co., 01-2297, p. 5 (La.6/21/02), 820 So.2d 542, 545-46:
Under LSA-C.C. art. 2747, generally, “an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge.” See Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2nd Cir. 1982). However, this right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. Moreover, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers’ compensation claims. Aside from the federal and state statutory exceptions, there áre no “[bjroad policy considerations creating exceptions to employment at will and affecting relations between employer and employee.” See Gil v. Metal Service Corp., 412 So.2d 706, 708 (La.App. 4th Cir.1982).
In this matter, while plaintiff has generally alleged that her “constitutionally protected” “due process” or “property rights” were violated, she cites no constitutional or statutory provision under which she asserts these claims. Nor does she claim to be a member of a “protected class” against whom ARC took an adverse employment action.”[18] We note that clas *98 sified public employees and civil servants have certain recognized property rights in continued employment and may not be deprived of those rights without due process of law.[19] However, plaintiff is | ^neither a public employee nor a civil servant. We know of no statute or case law (and plaintiff cites neither) which acknowledge the constitutional protection of employment in general.[20]
The record clearly demonstrates that plaintiff had no contract of employment with ARC, as she admitted in her deposition:
Q_[D]id you have a written employment contract with Amistad ever?
A. No I did not.
Accordingly, absent an employment contract, there can be no dispute that plaintiff was an “at will” employee of ARC, as is consistent with ARC’S Personnel Policies, which specifically state that “all employees of [ARC] are considered ‘at will’ employees.” As we recognized in Bell, “[the employer] only needed to prove that [plaintiff] was an ‘at will’ employee” for purposes of establishing that summary judgment was appropriate. Bell, 00-0824, p. 5, 785 So.2d at 929. In fact, the Bell court noted that, for an “at will” employee, “the reasons for termination need not be accurate, fair or reasonable;” likewise, “there need be no reason at all for termination.” Id., 00-0824, p. 4, 785 So.2d at 928.[21] We find, therefore, that the | atrial court correctly granted summary judgment as we find no genuine issue of material fact that plaintiff was an “at will” employee who could be terminated by ARC for any reason and at any time.
We likewise find no merit to plaintiff’s contention that ARC’S Personnel Policies “officially provided a ‘due process’ right” or that the court “can find a contractual right or implied contractual right.” This Court noted in Stanton, 00-0403, p. 13, 777 So.2d at 1250, “[t]he contention that a handbook creates a contract between an otherwise ‘at will’ employee and his employer is neither novel nor, in this jurisdiction, meritorious.” The Stanton Court then cited Mix v. The University of New Orleans, 609 So.2d 958, 964 (La.App. 4 Cir.1992), which affirmed the dismissal, by summary judgment, of a wrongful termination case, and noted:
(1) There are no -Louisiana cases holding that employee manuals, policies, or grievances procedures confer any contractual rights upon employees or create any exceptions to the “employment at will” doctrine.
*99 (2) Several Louisiana cases have held that employee manuals as well as company policies and procedures do not confer contractual rights upon employees nor create any exceptions to the “employment at will” doctrine ... Therefore, we hold that the University Grievance Procedure created no contractual rights in favor of Mix. Consequently a determination of whether those procedures were properly followed is irrelevant and raises no genuine issue of material fact.
(3) The employee’s “expectation” that the University would adhere to the provisions of the Grievance Procedure does not give him any legal rights. [Citation omitted.]
(4) The reasons for termination need not be accurate, fair or reasonable.... The question of why Mix was terminated |i7is irrelevant and consequently raises no genuine issue of material fact.
Id., 00-0403, p. 14, 777 So.2d at 1250.
In line with Stanton and Mix, we conclude that ARC’s Personnel Policies do not alter plaintiffs status as an “at will” employee or otherwise reflect a contract of employment between plaintiff and ARC. Nor does plaintiffs longevity as an ARC employee create an implied contractual right to continued employment.
We further reject plaintiffs argument that ARC violated La. R.S. 23:631 “by failing to pay [plaintiff] ‘any amount then due under the terms of employment, whether the employment is by the hour, day, week, or month....’”[22] Plaintiff maintains that “[a]bsent a 30-day notice, she was entitled to compensation for thirty (30) days.”[23] It is unclear on what basis she maintains that she is entitled to pay for thirty days, although it appears that she relies on ARC’s Personnel Policies’ provision that “[f]or exempt staff, separation will take effect after one month’s notice or immediately upon payment of equivalent salary in lieu of notice.”[24]
|18As we have already held, ARC’s Personnel Policies do not create contractual rights between the parties and our jurisprudence clearly indicates that an employer is not liable to an employee for failing to follow its own internal policies (absent an employment contract). The Mix Court surveyed cases involving similar issues, one of which was the Second Circuit case of Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2 Cir.1982), in which the court held that “[pjlaintiffs allegation that the defendant failed to comply with its own personnel policy requiring three warnings to an employee prior to discharge does not amount to an allegation that defendant was contractually obligated *100 to her as part of an employment to give the warnings prior to discharge.” Mix, 609 So.2d at 962, quoting Williams, 416 So.2d at 638. The Williams court reasoned that, “there is no wrongful discharge when an employee hired without a fixed term or other contractual prerequisite to termination is fired.” Id.
Indeed, we noted in Mix that “employment at will may be altered by contract, but not by internal policies, procedures, and manuals.” Mix, 609 So.2d at 963 (emphasis supplied). Accordingly, we find that even had ARC failed to comply with its own internal policy to pay exempt employees “one month’s ... equivalent salary,” this failure would not create an actionable claim.
We do agree that under La. R.S. 23:631 A(l)(a), at the time of plaintiffs termination, ARC was obliged “to pay the amount then due under the terms of employment.” However, plaintiff admitted in her deposition that she “was paid for every day” she worked. ARC, therefore, complied with its statutory requirement to pay plaintiff her accrued salary.
| igNext, plaintiff contends that she is entitled to “penalty wages” under La. R.S. 23:632, which provides for penalties to be assessed against “[an] employer who fails or refuses to comply with the provisions of R.S. 23:631.” Because ARC complied with La. R.S. 23:631, plaintiff is not entitled to penalties under La. R.S. 23:632. See, e.g., Becht v. Morgan Bldg. & Spas, Inc., 02-2047, p. 4 (La.4/23/03), 843 So.2d 1109, 1112 (“[i]n order to recover penalty wages and attorney’s fees under La. R.S. 23:632, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand”) (emphasis added; citations omitted). Plaintiff has admitted that no wages were “due and owing” and therefore, the first factor for a claim for penalties cannot be met.
Lastly, we turn to plaintiffs argument that she is entitled to damages under La. C.C. art. 2315, and more specifically, that she suffered bodily injury as a result of defendants’ actions. To support this claim, plaintiff relies on the affidavit of her physician that she suffered headaches and high blood pressure problems which he attributes to her “job-related stress.” Plaintiff also relies on the affidavit of her husband, who attested to witnessing her “excruciating headaches” and “physical ill[ness]” resulting for her “stress workload” and that of a counselor, who attested to seeing plaintiff “emotionally upset and sometimes fearful.”
The ARC defendants’ argument that they are not liable for Article 2315 damages is two-fold. First, the ARC defendants maintain that the only liability an employer has for injury to an employee that is not compensable under Louisiana’s Workers’ Compensation Act is for an injury arising out of the employer’s intentional act. Second, citing the Louisiana Supreme Court case of White ¡¡Monsanto,[25] the ARC defendants contends that any claim plaintiff has for physical harm is wholly linked to, and indistinct from, her claim for emotional distress (which, as noted herein, has been dismissed from this action).
We need not reach the merits of the ARC defendants’ contentions, as we have already found that the ARC defendants are not liable under any theory for plaintiffs termination. Plaintiff suggests liability arising from La. C.C. art. 2315, Louisiana’s general tort law,[26] which provides in *101 subpart A that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Implicit in Article 2315 is an initial finding of wrongful conduct which causes injury. See, e.g., Hornsby v. Bayou Jack Logging, 04-1297, p. 8 (La.5/6/05), 902 So.2d 361, 367 (“[ujnder Louisiana Civil Code article 2315, a person may recover damages for injuries caused by a wrongful act of another”)(emphasis added).
In this matter, plaintiff has failed to demonstrate legally cognizable wrongful conduct on the part of the ARC defendants. Accordingly, the ARC defendants are not liable under Article 2315.
CONCLUSION
For the reasons set forth herein, the trial court’s judgment dismissing Leonce Hampton, Amistad Research Center and Lance Query is affirmed.
AFFIRMED.

. According to the Petition, ARC is "supported" by Tulane University, the United Church of Christ and "both private and public entities," including the Institute of Museum and Library Services ("IMLS”) which issued a grant to ARC having a term spanning from September 1, 2005 through August 1, 2007.

. Those "questionable uses" included the salaries of 2 graduate assistants, library consultant fees and travel expenses. Plaintiff questioned these expenditures because, according to plaintiff, there were no graduate students or library consultants working for ARC during that time period and the only authorized travel expense was that required to attend an annual meeting of the African-American Museum Association.

. ARC’s Personnel Policies, Section XIV, entitled "Appeal,” provides that, in the event an employee believes the ARC policies "have not been properly applied, he or she should report the grievance in writing to the executive director within five working days of the alleged improper application.”

. Plaintiff includes with this example that she was denied input into EVILS funded "initiatives.”

. The suspension cited plaintiff's “displaying a serious lack of judgment and unprofessional behavior that are harmful to the operation of the center and infringing on the rights of [ARC] staff persons to work in a non threatening [sic] environment.” Plaintiff maintains that this suspension was based on statements allegedly made by a third party, the content of which is unknown.

. One of the tasks required the use of the "Charles Rouseve Guide,” which was missing on December 22, 2010, but present when plaintiff returned to work on January 3, 2011.

.Plaintiff’s Second Amended Petition references the termination letter as an attachment; however, it was not attached to the copy in the record. The letter was attached as an exhibit to plaintiff’s memorandum in opposition to a motion for summary judgment and it reflects that plaintiff was terminated for "chronic unsatisfactory job performance, which is consistently below established standards in production, timeliness, and accomplishment of team goals.”

. Mr. Query is an ARC board member and its registered agent, and Tulane University's Dean of Libraries and Academic Information Resources.

. In addition to being a member of ARC’s board of directors, Mr. Query served on its Executive Committee and as the Chairman of its Education and Planning Committee.

. The third amending Petition repeats and gives more detail regarding many of the allegations contained in her original and subsequent amending petitions.

. The first Motion for Summary Judgment was not set for hearing as the then-presiding judge left the bench. The second Motion for Summary Judgment was filed so as to include Mr. Query as a mover. We will collectively refer to these parties hereafter as “the ARC defendants.”

. We note that Tulane University was not a party to the Motion for Summary Judgment and therefore, the judgment does not operate to dismiss it. See Burrows v. Executive Property Management Co., 13-0914 (La.App. 4 Cir. 3/12/14), 137 So.3d 698.

. We also note that plaintiff took no further actions with respect to .her appeal of the denial of the injunction and continued to actively engage in the litigation, only addressing this appeal when the ARC defendants filed their Motion to Dismiss more than two years after the judgment denying injunctive relief was issued.
We likewise note that the trial court's August 7, 2012 judgment dismissed the March 21, 2011 judgment and then entered final judgment dismissing plaintiff's claims for in-junctive relief. Because the appeal of the March 21, 2011 judgment was untimely, the trial court's March 21, 2011 became a final judgment. No motion for new trial was filed nor amendment of the judgment sought pursuant to La. C.C.P. art. 1951.

. Plaintiff ignores the Supreme Court’s ruling altogether, continuing to argue that "the rulings of both the district court and the 5-judge 4th Circuit panel upholding [her] claim of intentional infliction of emotional distress were consistent with Restatement of Torts, Second & Third ...” and that "[t]he District Court and the Fourth Circuit correctly denied the Defendants’ motion for summary judgment regarding the intentional infliction of emotional distress.”

. In this regard, plaintiff argues that she is entitled to injunctive relief for the deprivation of her due process rights. Again, as discussed previously, plaintiff's appeal of the denial of injunctive relief was untimely and will not be addressed.

. ARC’s Personnel Policies were "authenticated” by plaintiff’s affidavit attached to her opposition memorandum, in which she attested that the "documents attached” "are true and correct to the best of her knowledge and belief.” Whether this authentication is proper does not appear to be at issue, as the ARC defendants did not object to its use in the summary judgment proceeding.

."Exempt Positions” under the ARC Personnel Policies include the "Professional Staff” (which includes "administrative staff and mid-management positions”) and "Program Staff” (those positions which have program and administrative responsibilities "that are more complex than routine clerical tasks and are designated as program staff in position descriptions”). "Non-exempt Positions” include "support staff, persons who perform routine clerical, secretarial, and other office or archival functions under close supervision.”

. In her First Amended Petition, plaintiff generally alleges that she was subjected to a "hostile working environment which has caused severe mental anguish and emotional distress actionable under La. Civil Code, Article 2315.” However, in order to prevail in a hostile work environment claim, a plaintiff must assert and prove: (1) she belongs to a protected group; (2) she was subjected to harassment; (3) the harassment was motivated by discriminatory animus (for example, race); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. King v. Phelps Dunbar, L.L.P., 2001-1735 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012. Plaintiff has not alleged any of these elements to a hostile work environment claim.

. See Perry v. City of New Orleans, 11-0901, p. 7 (La.App. 4 Cir. 2/1/12), 104 So.3d 453, 457 (citations omitted); Banks v. New Orleans Aviation Bd., 08-0065, p. 8 (La.App. 4 Cir. 7/9/08), 989 So.2d 819, 824.

. In fact, in Stanton v. Tulane University of Louisiana, 00-0403, p. 16 (La.App. 4 Cir. 1/10/01), 777 So.2d 1242, 1252, this Court expressly rejected the principle of a recognized property right to employment:
[Plaintiff] would rely on jurisprudence in other states that he contends creates a "covenant of good faith and Fair Dealing” exception to employment at will, and, alternatively, would have this Court recognize an enforceable property right arising out of an employee's "expectation of continued employment.” This expectation theory was rejected specifically in Mix [v. The University of New Orleans, 609 So.2d 958,] 964. Absent a contract of employment, these concepts remain foreign to the scheme of Louisiana employment law.

. The ARC defendants, and Mr. Hampton in particular (through his affidavit), cite examples of reasons giving rise to their claims that plaintiff performed poorly in her job which warranted her termination. Because an employer may terminate an "at will” employee without even having a specific reason, we need not address the merits of ARC's decision to terminate plaintiff’s employment.

. La. R.S. 23:631 A(l)(a), upon which plaintiff relies, provides that "[u]pon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.”

. The ARC defendants correctly note that plaintiff did not specifically plead the violation of La. R.S. 23:631 in her original or any supplemental pleading. Ordinarily, appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed. Billieson v. City of New Orleans, 09-0410, p. 8 (La.App. 4 Cir. 11/12/09), 26 So.3d 796, 801-802. Nevertheless, we address the merits of plaintiff’s argument.

.It is unclear from the record whether plaintiff is an “exempt” or "non-exempt” employee as those terms are defined in ARC's Personnel Policies. We assume that plaintiff is an “exempt” employee, given her position as Director of Archives.

. 585 So.2d 1205 (La.1991).

. Lane v. State Farm Mut. Auto. Liability Ins. Co., 03-2099, p. 3 (La.App. 4 Cir. 8/25/04), 883 So.2d 5, 8.